**KENMORE JOINT VENTURE,**
Petitioner,

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

**The Upper Connecticut Avenue Betterment Association et al., Intervenors.**

No. 12544.

District of Columbia Court of Appeals.

Argued April 13, 1978.

Decided Aug. 23, 1978.

---

Norman M. Glasgow, Washington, D. C., with whom Whayne S. Quin and John F. McCabe, Jr., Washington, D. C., were on brief, for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the brief was filed, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on brief, for respondent.

B. Donovan Picard, Washington, D. C., entered an appearance for intervenors.

Before GALLAGHER and NEBEKER, Associate Judges, and UGAST, Associate Judge, Superior Court of the District of Columbia.*

UGAST, Associate Judge:

This is a petition for review of a decision of the District of Columbia Board of Zoning Adjustment (BZA) denying the application of petitioner Kenmore Joint Venture for a special exception pursuant to § 8207.2 of the Zoning Regulations.[1] In its application, petitioner sought modification of an earlier Order of the BZA in 1964 in which it had granted the owners of the property in ques-

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. This decision was rendered on August 24, 1977, in Appeal No. 12256.

tion a special exception to use adjoining lots zoned for single-family detached dwellings for accessory off-street parking.[2] The application was specifically directed at the modification of a covenant entered into with the District of Columbia pursuant to that Order and as a condition for approving the special exception.

Two issues are presented on this petition: (1) whether this court has jurisdiction to review the decision of the BZA; and (2) whether the interpretation by the BZA of its previous Order and the covenant entered into pursuant thereto was clearly erroneous.

Petitioner is the owner of the Kenmore Apartments and some unimproved property adjoining the site of the building. The apartment house, built prior to May, 1958, is located in the square-block area bounded generally by Connecticut Avenue on the west, Chevy Chase Parkway on the east, Legation Street on the north, and the residences lining Military Road on the south. The portion of the block fronting Connecticut Avenue is zoned R–5–C (medium high density apartment houses), while the rear or east portion of the block is zoned R–1–B (single-family detached dwellings). The Kenmore faces Connecticut Avenue and is situated on the northwest corner of the block on the land zoned R–5–C. Since May 12, 1958, the Zoning Regulations have required that newly constructed apartment houses provide on the same lot as the building a minimum of one 9 x 19 foot parking space for each three dwelling units. See Zoning Regulations, §§ 7201, 7201.1, 7204.1, and 7205.1. The Kenmore has 372 dwelling units and thus, had it been built after the effective date of these Regulations, would have been obligated to provide a minimum of 124 parking spaces. While the Kenmore

did provide approximately 87 parking spaces for tenants and their guests, it did not meet the off-street parking requirements of the 1958 Zoning Regulations as to the number or size of spaces.[3]

In 1960, Kenmore Apartments Inc., under different ownership, applied to the BZA for a special exception and a variance to permit it to use nine lots which it owned located to the east (rear) of the apartment building as accessory off-street parking to serve the tenants.[4] These lots were zoned single-family detached dwellings.[5] The BZA granted the application for a two-year period, at the end of which time it stated that it would "give consideration to making the parking permanent as part of the required parking for the Kenmore Apartments upon the filing of a new appeal." [6]

Three years later, the owners of the Kenmore asked the BZA to approve the accessory off-street parking on the same lots on a permanent basis. In Order No. 7298, the BZA granted the appeal to continue the use of the lots for parking purposes, on the condition that the owners agree to become a party to a covenant with the District of Columbia agreeing to the continued use of this property for off-street parking. For reasons not disclosed in the record, no covenant was ever entered into with the District pursuant to this Order, and apparently the Order never took effect.

Subsequently, the owners instituted a second appeal with the BZA again requesting permanent approval to use the nine lots for accessory off-street parking purposes. On July 21, 1964, the BZA issued Order No. 7792 granting the owners' appeal, again subject to the condition that they enter into a covenant with the District of Columbia. In accordance with this condition, the own-

2. This Order was issued in Appeal No. 7792 on July 21, 1964.

3. Some of the parking spaces provided were smaller than the requisite 9 x 19 feet.

4. Since the accessory parking spaces were to be provided on recorded lots other than those on which the apartment building is situated, special exception approval was necessary. Zoning Regulation § 7205.1. A variance was

also needed as to those parking spaces which were more than 200 feet away from the area to which they were to be accessory. See Zoning Regulation § 3101.411.

5. The lots were numbered 23, 24, 25, 26, 27, 28, 29, 815 and 816 in Square 1870.

6. This Order was entered in Appeal No. 5875 on April 25, 1960.

ers of the Kenmore, on August 5, 1964, did enter into a covenant with the District concerning, for purposes relevant to this appeal, the future use of the property for parking which they were voluntarily obligating themselves to provide as a result of their application to the BZA.

The present controversy arose when petitioner, in January, 1976, requested the District of Columbia Zoning Commission to rezone several of the lots on which some of the accessory off-street parking spaces are located. Petitioner desired to have the lots rezoned so that it could build townhouses.[7] It is apparent that petitioner was motivated in attempting to obtain the rezoning of these lots by the fact that many of the parking spaces which had been provided on these lots were not being used, and in fact had been blocked-off for several years.[8]

On April 8, 1976, the Zoning Commission dismissed petitioner's application for a map amendment to permit it to build the townhouses. The basis of the dismissal, which was without prejudice, was the provisions of the covenant entered into by petitioner with the District pursuant to Order No. 7792. Prior to taking such action, however, the Director of the Municipal Planning Office, on behalf of the Zoning Commission, had requested an opinion of the Corporation Counsel as to the legal effect of the covenant on the Zoning Commission's authority to rezone the lots and whether the petitioner had to seek permission of the BZA to release the covenant before proceeding with its application for a map amendment.

On the basis of the Corporation Counsel's suggestion,[9] petitioner filed an application with the BZA in July, 1976, to obtain modification of its previous Order in No. 7792. Petitioner's application was in the nature of a request for BZA approval of a proposed parking plan that would locate the parking spaces required under the Zoning Regulations solely on lots 23 and 24 and on portions of three other lots, thereby permitting the utilization of the remaining area on which accessory off-street parking is not required under the Regulations for the townhouses. Since approval of the application required, in the opinion of the petitioner, the granting of a special exception, it filed the application pursuant to § 8207.2. The BZA never questioned the procedure which petitioner followed in seeking to obtain its desired result.

The record itself reflects petitioner's own uncertainty as to what relief was needed in order to obtain approval of the proposed parking plan. In its application to the BZA, petitioner sought modification of Order No. 7792, and the statement accompanying its application requested a modification of that Order. In the same statement, however, petitioner asserted that the covenant entered into pursuant to the Order was inartfully drawn and did not reflect the intention of the owners of the Kenmore and the BZA's resulting Order in Appeal No. 7792. Thus, petitioner additionally sought a modification of the covenant.[10] Petition-

7. It was petitioner's intention to construct 16 townhouses on lots 26, 27, 28, 29, and on portions of lots 25, 815 and 816, such lots being presently zoned for single-family detached dwellings. Under its plan, accessory parking would continue to be provided on lots 23, 24, and on parts of lots 25, 815 and 816.

8. The property manager for the Kenmore Apartments testified before the BZA that, during the seven previous years, as many as 75 of the 151 spaces available for parking were never rented and 64 of these had been blocked-off for the entire period of time.

9. In an opinion dated April 8, 1976, the Corporation Counsel stated that the covenant with the District of Columbia would not prevent the Zoning Commission from rezoning the lots, but

that so long as it was in effect, the covenant by its terms would preclude the use of lots in any manner other than for accessory parking spaces. He therefore suggested that petitioner apply to the BZA for a modification of the conditions imposed in Order No. 7792. The Corporation Counsel, however, apparently did not address the language of the condition on which the covenant was based.

10. At a public hearing on February 14, 1977, before the BZA, petitioner's counsel stated that petitioner was seeking to have the Office of the Corporation Counsel be instructed to conform the language of the covenant to that employed in the Order. Counsel reiterated several times at the hearing that all he was concerned with was the way the covenant had been drafted.

er's counsel further argued before the BZA that the manner in which the covenant was drafted obligated petitioner to provide more parking spaces than the Zoning Regulations required. He specifically asserted that petitioner was not seeking a modification of the Order itself, but wanted the BZA to reaffirm the conditions imposed therein. Petitioner, he contended, merely wanted a change in the covenant.

In its decision, the BZA concluded that, "while the language of the covenant differs somewhat from the language of the Order, the covenant is not more restrictive than the Order in any way material to this case. In sum the covenant carries out the intent of the Board." In its brief to this court, petitioner concurred in this conclusion, stating that the covenant was not more restrictive than the conditions imposed in Order No. 7792. Although we have some difficulty following the change in positions taken by petitioner at various stages of the proceedings, it is clear that, in order to obtain the rezoning which would permit the townhouses on the lots in question to be constructed, petitioner needed at a minimum a clarification of the meaning of the conditions in the Order and the language in the covenant and, possibly, a modification of both.[11]

The decision of the BZA not to grant modification of the covenant was necessarily based upon an interpretation of its own Order No. 7792 and the conditions therein. The BZA interpreted condition (a) in Order No. 7792 to require continuation of the exclusive use of the property for accessory off-street parking, and concluded that the covenant carried out the intent of the condition in that fashion. The BZA declined to modify the condition and denied the application for a special exception, noting that the exclusive use for accessory parking should be retained in any event to protect

the surrounding neighborhood from potential additional on-street parking in the future. Therefore, in light of the decision of the BZA, the meaning of the condition, as well as the meaning of the language of the covenant, is before the court.

A Motion for Reconsideration was timely filed with the BZA on September 1, 1977. While that motion was still pending, petitioner filed a petition for review with this court on September 8, 1977. The Motion for Reconsideration was subsequently denied on December 14, 1977. Petitioner thereafter did not file an additional petition for review.

We consider the jurisdictional issue first. The Corporation Counsel argues that this court lacks jurisdiction on the ground that the petition for review was filed prematurely, and was not refiled within 15 days of the denial by the BZA of petitioner's Motion for Reconsideration in accordance with our Rule 15(c). For the reasons which follow, we reject this argument.

Our jurisdiction to consider this appeal is based on D.C.Code 1973, § 11–722, providing specifically for review of decisions of the BZA in accordance with the D.C. Administrative Procedure Act (D.C.Code 1973, §§ 1–1501 *et seq.*). This petition filed within 15 days from the date formal notice of the BZA's order had been given fully met the requirements of our Rule 15(b), and respondent does not question its timeliness under that subsection of the Rule. Respondent, however, contends that the BZA's order lacked finality because the petition for review was filed with this court while a Motion for Reconsideration was still pending and undecided. In support of its contentions, respondent relies on subsection (c) of our Rule 15 and the rationale of the decision in *Braniff Airways v. Civil Aeronautics Board,* 79 U.S.App.D.C. 341, 147 F.2d 152 (1945).

Had the covenant included the relevant language of the Order, counsel stated, "we wouldn't be here today." (R. 210.)

11. At the hearing before the BZA, neighborhood citizen opposition, particularly that of the Upper Connecticut Avenue Betterment Associ-

ation and the two residents who were permitted to intervene, was directed principally to the ultimate rezoning of the lots, rather than to the proposed realignment of the off-street parking or to petitioner's arguments with respect to the covenant.

Rule 15(c) is essentially a tolling provision. It merely provides that the time for filing a petition for review is terminated by the filing of a petition for rehearing or reconsideration of an agency order and the 15 days allowed under subsection (b) only begins to run from the date of the order denying reconsideration. We do not read Rule 15(c) to affect the finality of administrative orders. We find support for this view in the rules of the BZA. Rule 5.46 provides that neither the filing nor granting of a Motion to Reconsider affects the finality of a BZA decision, absent a specific order otherwise, and Rule 5.47 makes it clear that a Motion for Reconsideration is not a prerequisite of judicial review.[12]

Respondent's reliance on *Braniff Airways v. Civil Aeronautics Board, supra,* is also misplaced. Neither *Braniff* nor *Outland v. Civil Aeronautics Board,* 109 U.S.App.D.C. 90, 284 F.2d 224 (1960),[13] stood for the proposition that an administrative order should not be treated as final where an outstanding Motion for Reconsideration is pending. Rather, both cases held only that a petition for review was timely filed if filed in time from the date on which the Board disposed of pending Motions for Reconsideration. In *Outland, supra* at 93–94, 284 F.2d at 227, our Circuit Court did note that when a party elects to seek a rehearing, "there is always a possibility that the order complained of will be modified in a way which renders judicial review unnecessary." The court, however, then went on to state merely that "practical considerations" dictated that when rehearing is sought, review "*may be deferred*" until the petition has been acted upon. (Emphasis supplied.)

Finally, respondent asks us to apply here our ruling in *West v. United States,* D.C. App., 346 A.2d 504 (1975), that a notice of appeal filed prior to the pronouncement of sentence in a case involving a finding of criminal contempt was premature and required dismissal of the appeal. The rule stated in the *West* case governing prematurity of appeals in criminal actions rests on the rationale that there is simply no final judgment from which an appeal may be taken after conviction until the imposition of sentence. *West, supra* at 506. An order of the BZA, however, under its own rules is deemed final when rendered. We, therefore, reject respondent's suggested analogy.

■ We do not believe that·petitioner's election to file a Motion for Reconsideration with the BZA, prior to petitioning this court for review, affects the finality of the decision of the BZA. Under the circumstances, deferral of jurisdiction pending disposition of the Motion for Reconsideration is not required by principles of finality. The early filing of a notice of appeal presents very different considerations from those involved in the situation where a party acts too late. We conclude, therefore, that considerations·of finality do not require us to withhold our jurisdiction to review this administrative order, where, as here, the Motion for Reconsideration was ultimately denied by the BZA. At this stage, the order from which review is sought is clearly final. Petitioner's intent to appeal was made manifest and the respondent can show no prejudice resulting from any prematurity of the petition. *See Stokes v. Peyton's Inc.,* 508 F.2d 1287, 1288 (5th Cir. 1975), and 9 Moore's Federal Practice ¶ 204.14 (1975).

We turn now to petitioner's substantive attacks on the BZA's decision. Petitioner has alleged a number of errors committed by the BZA, including a challenge to the jurisdiction and authority of the BZA to require more off-street parking spaces than are called for by the Zoning Regulations, and objections to some of the findings of fact and conclusions of law. In addition,

12. Rules of Practice and Procedure Before the BZA. 22 DCRR §§ 5.46, 5.47.

13. The Court in *Civil Aeronautics Board v. Delta Air Lines, Inc.,* 367 U.S. 316, 326, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961), referred to these cases in its discussion of the argument made there on the issue of the finality of a certificate issued by the Board. The sole issue in the *Delta Air Lines* case cited by respondent was whether the Civil Aeronautics Board could alter without notice or hearing a certificate of public convenience issued to an airline, once that certificate had gone into effect.

petitioner argues that the BZA improperly admitted and considered in reaching its decision evidence relating to neighborhood opposition to petitioner's overall development plans.

In light of the way we view this appeal, and our ultimate conclusions, we need not reach most of the specific errors asserted by petitioner. Insofar, however, as some of these issues are likely to surface again in future proceedings before the BZA in this case, a brief discussion of these may be helpful.

At the outset we note that the issue in this case is not whether the BZA is empowered to require a property owner to provide more off-street accessory parking places than required by the Zoning Regulations. The real issue in our view is the correct interpretation of a condition in Order No. 7792, upon which the covenant with the District of Columbia was based. Whatever that interpretation may be, the owners would be bound by the orders of the BZA which they sought and the covenant which they voluntarily entered into with the District.[14]

While petitioner's application to the BZA took the form of a request for a special exception, pursuant to § 8207.2 of the Zoning Regulations, more was involved in the consideration of that application than petitioner would lead us to believe. Underlying the task of the BZA in reviewing petitioner's application was an interpretation of its previous Order, as well as an interpretation of the covenant. Had the BZA not been faced with these questions, then perhaps, as petitioner argues, this would have been a typical special exception application. Since, however, these additional factors were present, we disagree with petitioner's contention that as long as it could meet the general criteria in the Regulations governing the allowance of special exceptions, then the BZA was required to grant its application, notwithstanding the condition in the 1964 Order or the covenant. Section 8207.2 of the Regulations does not limit the BZA merely to a determination whether the application fulfills the specified conditions in other sections of the Regulations—in this case §§ 7205.3 and 7205.31. Rather, § 8207.2 provides that the BZA "is authorized to grant special exceptions * * where in the judgment of the Board such special exceptions will be in harmony with the general purpose and intent of the zoning regulations and maps and will not tend to affect adversely the use of neighboring property."

Section 8207.2 of the Regulations thus effectively refutes petitioner's claim that the BZA had no alternative but to grant its application as long as it had demonstrated the general conditions of §§ 7205.3 and 7205.31 were met. The discretion given the BZA by § 8207.2, moreover, was a sufficient basis for the receipt into evidence of the neighborhood opposition objected to by petitioner. Any prejudice claimed to have resulted from the admission of such evidence did not, in any event, affect the BZA decision.[15] In short, we believe petitioner's assignments of error, other than its challenge to the interpretation of Order No. 7792, are not persuasive and need no further discussion.[16]

---

14. Section 7202.3 of the Zoning Regulations does not prohibit the voluntary establishment of accessory parking spaces in an amount which exceeds that required. A covenant generally speaking is an agreement to do or not do some particular act. 7 Thompson, Real Property, § 3150 (1962 Replacement Volume, Grimes, Ed.).

15. Although we believe that petitioner was not prejudiced by the admission of such evidence, the BZA noted in its findings that it gave no weight to, and considered irrelevant, the objections of the neighborhood representatives with respect to the proposed townhouse project.

We therefore find that neither § 1–1509(b), D.C.Code 1973, as amended, nor § 4.62 of the Rules of Practice and Procedure of the BZA were violated.

16. Petitioner's objections to Findings of Fact 4, 5, 7, 8 and 9 lack merit. We note particularly that petitioner itself introduced the evidence upon which Finding 5 was based and relied upon the recommendation of the Municipal Planning Office referred to in Finding 8. Surely it may not ask the BZA to accept that recommendation on face value, without permitting it to question the factors upon which it was based. While petitioner's objection, that Find-

Petitioner's principal contention which we believe merits serious consideration is that the BZA was clearly erroneous in its interpretation of the covenant, and necessarily the condition of Order No. 7792, and in so doing required an amount of off-street parking in excess of that intended by Order No. 7792. A resolution of this issue requires an analysis of the language employed in the condition and covenant as compared to that employed in pertinent sections of the Zoning Regulations in light of the previous efforts of the owners of the Kenmore to obtain approval for accessory off-street parking for its residents.

 In reviewing its decision, our duty is to determine whether the BZA's interpretation of the condition and the covenant is plainly erroneous and unreasonable or inconsistent with the Regulations. *See Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Barber v. District of Columbia Department of Human Resources,* D.C.App., 361 A.2d 194, 198 (1976); *Dietrich v. District of Columbia Board of Zoning Adjustment,* D.C.App., 320 A.2d 283, 285 (1974); *Taylor v. District of Columbia Board of Zoning Adjustment,* D.C.App., 308 A.2d 230, 232 (1973). This court, of course, must show great deference to the administrative construction and interpretation of the Regulations the BZA enforces, and *a fortiori,* its own orders. *Coakley v. Police and Firemen's Retirement and Relief Board,* D.C.App., 370 A.2d 1345, 1347–1348 (1977); *Commissioner of District of Columbia v. Beneson,* D.C.App., 329 A.2d 437 (1974). In performing our function of judicial review, we must consider the BZA's findings and determinations and whether the conclusions flow rationally from the findings, *Wieck v. District of Columbia Board of Zoning Adjustment,* D.C.App., 383 A.2d 7 (1978); *Dietrich, supra* at 285, but we may not substitute our own judgment so long as there is a rational basis for the BZA's decision. *Coakley, supra* at 1347.

██ The BZA, in its conclusions of law, interpreted condition (a) in Order No. 7792 "to require that the area approved for parking be reserved exclusively for parking if either of two situations exist: i. e. if the improvements to be served exist or if the zoning regulations require that the parking be provided." Since the Kenmore is still in existence, the BZA concluded that its prior Order required the continuation of the exclusive parking use. It further concluded that, although the language of the covenant differed somewhat from that employed in the Order, the differences were immaterial and the covenant carried out the intent of the Board. The BZA's interpretation of the condition in its prior Order, in our view, neglected to take into account the significance of the language in the second alternative read in conjunction with its previous Orders insofar as it provided a limitation on the area required to be reserved for off-street parking by reference to the Zoning Regulations. For the reasons which follow we find that the interpretations and conclusions of the BZA were "plainly erroneous." *Dietrich, supra* at 285–286.

When the owners of the Kenmore Apartments first applied to the BZA in 1960 for a special exception and variance to use the lots adjacent to the apartment building and zoned for single-family dwellings for accessory off-street parking, the BZA in its Order No. 5875, stated that "this parking is required." It further provided as one of the conditions that:

\* \* \* \* \* \*

(d) Upon the expiration of the two year permit the Board will give consideration to making the parking permanent *as part of the required parking for the Kenmore Apartments* upon the filing of a new appeal as stated in condition (a) above. [Emphasis supplied.]

Three years later, the present owners did appeal to the BZA, pursuant to the above Order, requesting that the accessory off-street parking be permitted on a permanent

---

ing 10 relating to fluctuation in demand for and use of off-street parking lacks support in the record, may have some validity, the BZA did not rely on this finding in reaching an interpretation of its prior Order.

basis. In that appeal, the BZA's Order No. 7798 was subject to the following condition:

(a) The parking spaces authorized under the terms of this Order *are required parking spaces* which will require the owner of the land upon which such parking is to be located to agree to become a party to a covenant with the District of Columbia to run with the land and to be binding upon him and his successors in title, which requires that the area approved for *required off-street parking shall be reserved exclusively for that purpose so long as the improvements to be served exist or so long as said accessory off-street parking is required by the Zoning Regulations.* [Emphasis supplied.]

On July 21, 1964, the BZA issued Order No. 7792, which is the subject of the present controversy. In the Order, the BZA approved off-street parking on the lots in question on a permanent basis subject to the following condition:

(a) The parking spaces authorized under the terms of this Order will require the owner of the land upon which such parking is to be located to agree to become a party to a covenant with the District of Columbia to run with the land and to be binding upon him and his successors in title, which requires that the area approved for off-street parking shall be reserved exclusively for that purpose *so long as the improvements to be served exist or so long as said accessory off-street parking is required by the Zoning Regulations.* [Emphasis supplied.]

All three Orders of the BZA must be considered in determining what the owners for their part were voluntarily obligating themselves to do in return for the grant of the special exception and variance, and what we believe the BZA intended as evidenced by the language employed in its Orders.

We believe that in each of the Orders the Board was referring to the off-street parking requirements in Article 72 of the Zoning Regulations. The term "required parking spaces" has a specialized meaning in such Regulations and is used in several sections. (*See* Zoning Regulations §§ 7201.11, 7201.12 and 7202.4.)

The phrase "required parking" as used in the prior Orders of the BZA derives a specific meaning only by reference to the Zoning Regulations. Viewed in that context, the words "required parking" must have been intended to mean, in reference to the Kenmore Apartments, 124 off-street parking spaces. Had the Zoning Regulations involving off-street parking been applicable to petitioner's property at the time of the 1960, 1963 and 1964 Orders, the Kenmore would have been obligated to provide that number of spaces, no more or no less. Order No. 7798 defined the parking spaces authorized under its terms as being "required parking spaces" and that Order, as well as the later one, required the area to be used for the purpose of parking, "so long as *said* accessory off-street parking is *required* by the Zoning Regulations." (Emphasis supplied.)

At the time it entered these Orders, the BZA must have been fully aware that the Zoning Regulations would have required the Kenmore Apartments to provide only 124 off-street parking spaces. Based upon the language employed by the BZA in all three Orders, we find that the parking spaces to which condition (a) of its last two Orders referred were the number of spaces which Article 72 would have obligated petitioner to provide had the Kenmore Apartments been constructed after May 12, 1958.[17]

Although it might be argued that the covenant entered into by the petitioner and the District of Columbia [18] appears on its

---

17. At the time the BZA issued the Orders to which we have made reference, it appeared to be unconcerned with the number of parking spaces which the owners of the Kenmore could practically locate on the lots. That this was not an important factor is evidenced by its repeated references to the parking spaces "required" under the Zoning Regulations.

18. The covenant entered into pursuant to this condition required in pertinent part:

1. That the parties of the first part [the owners of the Kenmore] will and by these present[s] do hereby constitute the above described Tract # 2 [the R–1–B lots upon which the accessory parking was to be locat-

face to be more restrictive than the condition in Order No. 7792 by the inclusion of paragraph 3, the language used therein, we believe, was not intended to have a different meaning than the phrase "shall be reserved exclusively for that purpose" found in condition (a). In any event, the BZA found that the covenant carried out the intent of the Order and the parties before the court agreed at oral argument that the covenant was intended to track the language of the condition. Since all parties agree, regardless of the language employed, that the covenant was intended by the BZA and the owners of the Kenmore to reflect the intent of condition (a) in Order No. 7792, and to be neither more nor less restrictive, we conclude that the covenant was merely intended to implement the condition and must be read in conformity with the interpretation we have given that condition.

In summary, we hold that the condition in Order No. 7792, as well as the covenant entered into with the District of Columbia, requires that only so much of the area encompassed by the nine lots in question as would have been needed to permit the Kenmore to provide in 1964 the total number of off-street parking spaces required under Article 72 of the Zoning Regulations must be utilized exclusively for that purpose.[19]

It remains for the BZA now to consider petitioner's proposed rearrangement of the accessory parking spaces as an application for a special exception in light of our interpretation of the condition in Order No. 7792, as well as any further request for modification of its prior Order. For these reasons, we reverse and remand for further proceedings.

*Reversed and remanded for further proceedings consistent with this opinion.*

---

ed] as accessory passenger automobile parking for the use and convenience of occupants and guests of the apartment building [the Kenmore] on Tract # 1, and the parties of the first part do further covenant that the aforesaid right to use Tract # 2 for accessory parking of motor vehicles shall be appurtenant to said Tract # 1 so long as Tract # 1 and the improvements thereon are used as apartment buildings or for any other purpose requiring accessory passenger automobile parking in accordance with the Zoning Regulations of the District of Columbia.

\* \* \* \* \* \*

3. That the said Tract # 2 will be used for no other purpose than for accessory parking spaces.

19. Since the Kenmore was providing 48 parking spaces in the building garage in 1964, an area sufficient to allow for 76 additional spaces would have been needed to bring the total to 124.