**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Petitioner,**

v.

**Maritza E. VILCHE, Respondent.**

**No. 05–AA–7.**

District of Columbia Court of Appeals.

Argued June 15, 2006.
Decided Aug. 30, 2007.

Michael A. Milwee, for petitioner.

Harry S. Clarke, III, with whom Joanne Rutkowski and Jeffrey M. Bauer were on the brief, for respondent.

Before FARRELL and FISHER, Associate Judges, and SCHWELB, Senior Judge.*

FISHER, Associate Judge:

The District of Columbia Department of Employment Services ("DOES") determined that respondent Maritza Vilche had received unemployment compensation benefits to which she was not entitled and ordered her to repay $6,358. She sought review, and an administrative law judge ("ALJ") reversed those determinations after concluding that DOES was not prepared to present its case at the scheduled hearing. DOES petitions this court to review that administrative order. We reverse and remand for further proceedings.

## I. OAH Proceedings

DOES claims examiner Vernell Dodd made an initial determination disqualifying Ms. Vilche from receiving unemployment compensation benefits for a specified period in the future because she "willfully and

---

* Judge Schwelb was an Associate Judge of the court at the time this case was argued. His status changed to Senior Judge on June 24, 2006.

knowingly failed to disclose [her] earnings." *See* D.C.Code § 51–119(e)(1) (2001) (section of the Unemployment Compensation Act prescribing penalties for "knowingly fail[ing] to disclose a material fact"). Ms. Dodd also issued Notices of Determination of Overpayment requiring Ms. Vilche to repay $6,358 in benefits that she had wrongfully received. Exercising her appeal rights, Ms. Vilche requested a hearing before the Office of Administrative Hearings ("OAH") to dispute those determinations.

Ms. Vilche and her attorney, as well as two claims examiners from DOES, Monica Madison and Ms. Dodd, attended a scheduled hearing on November 3, 2004. According to DOES, this was one of the first occasions on which the newly-established Office of Administrative Hearings reviewed an initial determination in an unemployment compensation case. *See* D.C.Code § 2–1831.03(b)(1) (2007 Supp.) (authorizing OAH, as of October 1, 2004, to review determinations made by DOES in unemployment compensation cases). Early in the proceeding, the ALJ informed Ms. Dodd that, as the claims examiner who made the initial determination, she was "not allowed to give testimony about the deliberative process that she went through in making her decision." However, the ALJ offered Ms. Madison the opportunity "to explain to this court why the determination was made and how it was made." Ms. Madison began to testify but was interrupted when she offered exhibits that had not been disclosed to Ms. Vilche in advance of the hearing. The ALJ postponed the hearing for one week so that Ms. Vilche and her counsel would have time to review the exhibits.

When the hearing reconvened on November 10, Ms. Dodd was present but explained that Ms. Madison had been "unavoidably delayed." After waiting "12 minutes to start the hearing," the ALJ determined that "[t]he representative from [DOES] who is responsible for presenting this case is not present.... [Ms. Dodd] can't offer testimony [because she is] ... the claims examiner in this case.... Therefore, [DOES] cannot carry the burden which they have to carry to demonstrate that there was an overpayment to Ms. Vilche ... [and] the determination is going to be reversed." On December 9, 2004, the ALJ issued a written final order ruling that Ms. Vilche "is not ineligible for benefits for the period September 12, 2004 through September 10, 2005 and she is not liable for alleged overpayments of $6358." DOES promptly filed a motion for reconsideration and new trial, which was denied.

Attached to the motion of DOES was an affidavit from Ms. Dodd, who stated that on November 10 she informed the ALJ "that it was I who knew the case and was prepared to go forward and present the case. The Administrative Law Judge declined to allow me to proceed." The ALJ denied a new trial because DOES "ha[d] already been given two chances to come to a scheduled hearing and litigate this matter." The ALJ also rejected DOES's argument that she should not have precluded Ms. Dodd "from prosecuting and testifying at the second hearing." The administrative judge explained that the claims examiner is "a neutral adjudicator deciding the facts and applying the law" and "cannot prosecute or testify in an appellate hearing in the same case."

## II. Jurisdiction

◼ Ms. Vilche has moved this court to dismiss DOES's petition for lack of jurisdiction. She asserts that the petition for review is ineffective because it was filed prematurely on January 11, 2005, after DOES had moved for reconsideration on December 20, 2004. "As a general matter, this court has jurisdiction to re-

view only agency orders or decisions that are final," *Warner v. District of Columbia Dep't of Employment Servs.*, 587 A.2d 1091, 1093 (D.C.1991); *see* D.C.Code §§ 2–510 and 11–722 (2001), and OAH Rules provide that when a motion for reconsideration is timely filed, the previous order "shall not be deemed final for purposes of judicial review until the motion is ruled upon by [the ALJ] or is denied." 1 DCMR § 2832.3 (2004). The motion for reconsideration was denied on January 19, 2005, only days after DOES filed its petition to this court. DOES did not file a new petition for review on or after January 19.

Ms. Vilche relies on two cases to support her contention that DOES was obliged to file a separate petition for review after the January 19, 2005, decision. *Natural Motion by Sandra, Inc. v. District of Columbia Commission on Human Rights,* 726 A.2d 194, 197 (D.C.1999), recognized that "an agency decision is not final for purpose of appeal to this court until all motions for reconsideration have been acted upon by the agency." However, this court held in *Natural Motion* that the Commission on Human Rights properly had considered a fee petition that was filed *before* the pending motions for reconsideration were denied. *Id. Natural Motion* clearly did not overrule a previous decision where we exercised jurisdiction although the petition had been filed before a motion for reconsideration had been denied. *See Kenmore Joint Venture v. District of Columbia Board of Zoning Adjustment,* 391 A.2d 269, 274 (D.C.1978) ("[C]onsiderations of finality do not require us to withhold our jurisdiction to review [an] administrative order, where, as here, the Motion for Reconsideration was ultimately denied ....."); *see also Robinson v. Howard Univ.,* 455 A.2d 1363, 1365–66 n. 1 (D.C. 1983) (although notice of appeal in civil case had been filed prematurely, this court exercised jurisdiction where order had be-

come final by the time the appeal was submitted to the panel). DOES's petition for review may have been filed prematurely, but it became effective when the ALJ denied the motion for reconsideration on January 19.

Ms. Vilche principally relies upon *TeleSTAR, Inc., v. Federal Communications Commission,* 281 U.S.App.D.C. 119, 121, 888 F.2d 132, 134 (1989), which held that "the filing of a challenge to agency action before the agency has issued its decision on reconsideration is incurably premature" and that "the challenging party must file a new notice of appeal or petition for review from the now-final agency order." In other words, "a prematurely-filed petition does not ripen...." *Id.* Interestingly, however, the court gave this rule only prospective effect, denied the motion to dismiss, and permitted "consideration of the originally-premature petition for review." *Id.*

*TeleSTAR* clearly supports Ms. Vilche's position, but we are not bound by this decision of the United States Court of Appeals rendered after February 1, 1971. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). On the other hand, we are bound by the decision in *Kenmore,* which was decided by another division of this court. *Id.* We likely would have dismissed the petition if the jurisdictional issue had been brought to our attention while the motion for reconsideration was still pending. *See Carter v. Cathedral Ave. Coop., Inc.,* 532 A.2d 681, 683 (D.C.1987). "At this stage, [however,] the order from which review is sought is clearly final. Petitioner's intent to appeal was made manifest and the respondent can show no prejudice resulting from any prematurity of the petition." *Kenmore Joint Venture,* 391 A.2d at 274. We have jurisdiction to consider the petition for review and now turn to the merits.

## III. Claims Examiner as a Quasi-judicial Officer

### A. Standard of Review

■ This court reviews the decisions of OAH to determine whether they are "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." D.C.Code § 2–510(a)(3)(A) (2001); see also Rodriguez v. Filene's Basement Inc., 905 A.2d 177, 181 n. 4 (D.C.2006) (the standards of review prescribed in this section of the District of Columbia Administrative Procedure Act apply to review of OAH decisions under D.C.Code § 2–1831.16(g)). We "must affirm an OAH decision when (1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) OAH's conclusions flow rationally from its findings of fact." Rodriguez, 905 A.2d at 180. We defer to the agency's findings so long as they "are supported by substantial evidence in the record considered as a whole." Cooper v. District of Columbia Dep't of Employment Servs., 588 A.2d 1172, 1174 (D.C.1991); see D.C.Code § 2–510(a)(3)(E). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Canlas v. District of Columbia Dep't of Employment Servs., 723 A.2d 1210, 1211 (D.C.1999) (quoting Dell v. Dep't of Employment Servs., 499 A.2d 102, 108 (D.C.1985) (quotation marks and citation omitted)).

### B. Discussion

■ OAH's primary reason for precluding Ms. Dodd from testifying was that she "would be switching roles from neutral decision-maker to advocate and would be subject to cross examination . . . as to . . . [her] analytical process." The ALJ explained that, "[h]aving acted as a neutral quasi-judicial officer, Ms. Dodd was prohibited by law from prosecuting DOES' case before me at the second hearing on November 10, 2004 when Ms. Madison failed to appear." In its order denying reconsideration, OAH cited United States Supreme Court cases involving judges who presided over cases although they had a disqualifying interest.[1] It also cited Federal Rule of Evidence 605, which prohibits a judge from testifying in a trial over which she or he presides. Each of these explanations assumes that claims examiners are neutral, quasi-judicial officers. That proposition is neither self-evident nor is it made clear by the statutes and regulations that govern unemployment compensation cases. Moreover, we have not been presented with a factual record to support that conclusion.

The District of Columbia Unemployment Compensation Act provides that the "initial determination" of a claim for benefits shall be made by "an agent of the Director [of DOES] designated . . . for such purpose. . . ." D.C.Code § 51–111(b). DOES regulations in turn require that "the Director shall make an initial determination of eligibility promptly," 7 DCMR § 305.1 (2004), after "an informal hearing,"

---

1. The ALJ cited Ward v. Village of Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) (mayor responsible for village finances could not preside over traffic cases in which the village would benefit from his decision to levy fines); In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (violation of due process for a judge both to act as a one man grand jury and to preside over non-jury trial and adjudicate witnesses guilty of contempt for events which took place before him in the grand jury proceedings); and Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (violation of due process for a judge to receive the fees levied against a defendant as a form of compensation for the judge's services).

§ 305.2, also referred to as a "predetermination fact-finding interview," *id.,* where evidence is received "to determine whether an otherwise eligible claimant is subject to disqualification," *id.* Although these regulations make clear that the examiner considers evidence and makes the initial determination, they are silent on whether the examiner must perform her duties as though she were a quasi-judicial officer.

Federal law also imposes obligations on states that administer unemployment compensation programs "financed in part by grants from the United States pursuant to the Social Security Act, 42 U.S.C. §§ 501–503." *California Dep't of Human Resources Development v. Java,* 402 U.S. 121, 125, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971). These include use of "methods of administration ... reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1) (2000). Applicable federal statutes and regulations provide broad guidance on administering such programs, but they do not require that states make initial determinations to grant or deny claims in any particular manner. *See* 20 C.F.R. §§ 602.1–602.43 (regulations governing quality control in the federal-state unemployment insurance system). The state agency is required to investigate the claim, to "take the initiative in the discovery of information," and to do so "promptly so that the payment of benefits is not unduly delayed." 20 C.F.R. Pt. 602, App. A (Part V, Section 6013 of the Employment Security Manual). Nothing brought to our attention precludes a claims examiner from performing this investigation, making the initial determination of whether benefits are due, and later presenting DOES's evidence at a review hearing. By contrast, where a claimant has already been denied benefits, the Social Security Act guarantees him the "[o]pportunity for a fair hearing, before an impartial tribunal." 42 U.S.C. § 503(a)(3) (2000).

The same procedures that apply to initial determinations are followed when DOES retrospectively considers whether a person has received benefits to which she was not entitled. *See* D.C.Code § 51–119(d)(2). Similarly, findings with respect to disqualification for knowingly failing to disclose a material fact "shall be made by a claims deputy of the Director and such findings shall be subject to review in the same manner as all other disqualifications made by a claims deputy of the Director." D.C.Code § 51–119(e)(2).

The ALJ assumed that Ms. Dodd was a neutral, quasi-judicial officer but did not state the legal or factual basis for this assumption. DOES has a much different understanding of the process. In its briefs, DOES describes claims examiners as "active participants in the development of facts necessary to resolve claims, not passive adjudicators." It contends that "the claims examiner does not conduct anything resembling a trial type hearing, administer oaths, issue subpoenas or take testimony," and that her duties are "more the duties of an insurance adjustor, welfare case worker, or investigating police officer, all of whom make decisions and none of whom would be considered a judge." There is no evidence in the record clarifying the role of the claims examiner, let alone to support the ALJ's conclusion that a claims examiner is "a designated neutral" presiding over an "adjudicative proceeding."

DOES emphasizes that significant practical consequences will follow if OAH's order stands. Requiring an additional witness to testify in lieu of the claims examiner who made the initial determination would "deprive DOES ... of its most knowledgeable witness." It also would severely strain the resources of

DOES. If the claims examiner is disqualified, then another member of its busy staff will have to become familiar with the case in order to appear at the appeal hearing. DOES points out that the former employer does not always appear for such hearings, and would have little, if any, relevant knowledge about issues, such as overpayment, that arose after the employment ended. According to DOES, it has been the agency's practice for over sixty years to send only the interested claims examiner to the hearing. If that is true, then the ALJ has required an enormous change in longstanding practice without sufficient legal or factual support.

Lacking a sufficient factual record, we will not attempt to answer the legal questions raised by OAH's order. However, it is useful to remember that, in the field of administrative law, a government official who investigates and determines facts is not necessarily created in the judicial image. The Supreme Court has emphasized the need to observe "vital differentiations between the functions of judicial and administrative tribunals...." *Federal Communications Commission v. Pottsville Broadcasting Co.*, 309 U.S. 134, 144, 60 S.Ct. 437, 84 L.Ed. 656 (1940); *see also Withrow v. Larkin*, 421 U.S. 35, 52, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) ("The incredible variety of administrative mechanisms in this country will not yield to any single organizing principle."). Moreover, the Court has emphasized the difference between formal and informal adjudication. *See Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 655–56, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990); *Richardson v. Perales*, 402 U.S. 389, 400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (describing system for deciding claims for social security dis-

ability benefits: "There emerges an emphasis upon the informal rather than the formal. This, we think, is as it should be...."). *See also Richard Milburn Public Charter Alternative High School v. Cafritz*, 798 A.2d 531 (D.C.2002) (neither the Constitution nor the District of Columbia Administrative Procedures Act entitled petitioners to a trial-type, contested case hearing); *City of West Chicago v. United States Nuclear Regulatory Commission*, 701 F.2d 632, 644 (7th Cir.1983) (discussing proposition that "adjudication may be either informal or formal").

In a high-volume system like that at issue here, there may be room for a claims examiner to wear more than one hat. *See Richardson v. Perales*, 402 U.S. at 410, 91 S.Ct. 1420 ("Neither are we persuaded by the advocate-judge-multiple-hat suggestion [as a basis for invalidating the administrative procedure]. It assumes too much and would bring down too many procedures designed, and working well, for a governmental structure of great and growing complexity."); *Park v. District of Columbia Alcoholic Beverage Control Board*, 555 A.2d 1029, 1032 (D.C.1989) (discussing "multiple-hat" rule); *Citizens Association of Georgetown, Inc. v. District of Columbia Alcoholic Beverage Control Board*, 359 A.2d 295 (D.C.1976) (same). It may be wise to separate functions when it is practical to do so, and due process sometimes may require this to be done, but our own research has revealed instances where adjudicators have played a later role in the case. *See, e.g., Watergate West, Inc. v. District of Columbia Board of Zoning Adjustment*, 815 A.2d 762, 764 (D.C.2003) ("At a hearing before the BZA a few months later, [the Zoning Administrator] testified about the basis for his decision.")[2]

---

2. We recognize that "inquiry into the mental processes of administrative decisionmakers is usually to be avoided." *Citizens to Preserve*

*Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (citing *United States v. Morgan*, 313 U.S. 409, 422, 61

; *Carroll v. District of Columbia Board of Appeals and Review,* 292 A.2d 161, 163 (D.C.1972) (rejecting complaint "that the Assistant Corporation Counsel who sat as a member of the Retirement Board when [petitioner's] case was heard also acted as counsel on behalf of the District of Columbia at the later hearing before the Board of Appeals and Review"; "in the absence of any showing that petitioner was prejudiced thereby, this combination of functions did not constitute error"). Given the complexities of the issue and the lack of a sufficient record, further consideration is required.

## IV. Conclusion

The ALJ's decision to preclude Ms. Dodd from testifying was not supported by substantial evidence. Nor, on this record, can we say that it was otherwise in accordance with law.[3] Therefore, we reverse and remand for further proceedings not inconsistent with this opinion. On remand, Ms. Dodd may not be precluded from testifying unless OAH identifies a sounder basis in fact and law than has been shown thus far for excluding her testimony.

*So ordered.*

S.Ct. 999, 85 L.Ed. 1429 (1941)). However, adhering to this general principle does not necessarily require a blanket order forbidding the claims examiner from presenting the evidence gathered by DOES.

3. We do not question the ALJ's authority to control her docket, *see* D.C.Code § 2–1831.09(b)(7) (2007 Supp.), "protect the integrity of [the administrative court's] proceedings," or "regulate and restrict the right of any individual to appear before [the] court." 1 DCMR § 2839.5 (2004). Ordinarily, it would be acceptable for an ALJ to dismiss a case when a party was twice unprepared to proceed. In this case, however, Ms. Dodd was present and ready to proceed; it was the ALJ's ruling, discussed above, that prevented her from doing so.