Daniel J. COAKLEY, Petitioner,

v.

**POLICE AND FIREMEN'S RETIRE-
MENT AND RELIEF BOARD et
al., Respondents.**

No. 9081.

District of Columbia Court of Appeals.

Argued Nov. 6, 1975.

Decided March 9, 1977.

Edward Jasen, Washington, D. C., for petitioner; Robert Cadeaux, Washington, D. C., was on the brief.

Leo N. Gorman, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondents.

Before NEBEKER and HARRIS, Associate Judges, and JOHNSON, Associate Judge, Superior Court.*

JOHNSON, Associate Judge:

Daniel J. Coakley, petitioner, challenges two rulings of the Police and Firemen's Retirement and Relief Board (Retirement Board) dated October 6, 1972, and June 22, 1973, respectively, and the October 10, 1974, decision of the Board of Appeals and Review (BAR) affirming the Retirement Board rulings.[1]

Petitioner was appointed to the District of Columbia Fire Department in 1963. After nine years of service, he was presented to the Retirement Board by the Board of Police and Fire Surgeons due to chronic asthmatic bronchitis with hypersensitivity to smoke and a non-contributory chronic behavioral problem. Based on the medical evidence adduced at the hearing, the Retirement Board, on January 6, 1972, found that petitioner was unable to perform firefighting duties as a result of his respiratory ailment, but was capable of performing non-firefighting duties within the department. Since petitioner was not precluded from further useful service in the department, the Retirement Board concluded that petitioner's malady did not constitute a "disability" within the meaning of D.C.Code 1973, § 4–521(2).[2] Petitioner was reassigned to, and commenced, a non-firefighting job in the department while retaining the same salary and grade level, i. e., Private, Class I–A, Step 6. Petitioner ap-

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. The BAR no longer has any review with respect to decisions of the Retirement Board. See Stoner v. District of Columbia Police and Firemen's Retirement and Relief Board, D.C. App., 368 A.2d 524 at 526 n.2 (1977).

2. D.C.Code 1973, § 4–521(2) provides:

The terms "disabled" and "disability" mean disabled for useful and efficient service in the grade or class of position last occupied by the member by reason of disease or injury, not due to vicious habits or intemperance as determined by the Board of Police and Fire Surgeons, or willful misconduct on his part as determined by the Commissioners.

pealed the January 6, 1972, decision to the BAR.

A few months later, petitioner appeared before the Fire Department Trial Board (Trial Board) for disciplinary action resulting from allegations of bizarre behavior following his transfer to the non-firefighting unit. The Trial Board dismissed petitioner from the department, thereby depriving him of any annuity. Petitioner appealed the Trial Board's decision to the BAR.

At petitioner's request, Mayor-Commissioner Walter E. Washington stayed further action on the appeal from the findings and recommendation of the Trial Board and remanded the case to the Retirement Board for consideration of petitioner's claim of psychological disability. On the basis of the Mayor-Commissioner's action, and with the concurrence of the Corporation Counsel, the BAR dismissed the pending appeal of the January 6, 1972, Retirement Board decision without prejudice and remanded the case to the Retirement Board for a hearing on petitioner's claim of psychological disability.

On June 22, 1973, the Retirement Board ruled on both of petitioner's pending cases. First, it set aside the Trial Board's recommendation that petitioner be dismissed from the department for disciplinary problems. Second, based on a reconsideration of petitioner's claim of psychological disability, the Retirement Board ordered petitioner retired under D.C.Code 1973, § 4–526.[3] The ruling on the disability issue followed a full hearing and a finding that petitioner was psychologically incapacitated but that his mental condition was neither duty-caused nor duty-aggravated.

Petitioner thereupon reinstated his appeal of the January 6, 1972, Retirement Board decision and also appealed the June 22, 1973, decision of the Retirement Board to the BAR. On October 10, 1974, the BAR unanimously sustained both Retirement Board decisions. When the petition for reconsideration was denied, the petition for review presently before the court was filed.

### THE 1972 BAR DECISION

Petitioner challenges the sufficiency of the evidence and the Retirement Board's and the BAR's interpretation of the term "disabled" as defined in § 4–521(2).

■ In reviewing the findings of an agency of the District of Columbia, the District of Columbia Administrative Procedure Act provides that this court must hold unlawful and set aside any agency decision not based upon substantial evidence.[4] Therefore, the court must consider whether the agency findings are supported by reliable, probative, and substantial evidence in the record, and whether the conclusions reached by the agency "flow rationally from these findings." *Dietrich v. District of Columbia Board of Zoning Adjustment,* D.C.App., 320 A.2d 282 (1974); *Marjorie Webster Junior College, Inc. v. District of Columbia Board of Zoning Adjustment,* D.C.App., 309 A.2d 314, 319 (1973); *Schiffmann v. ABC Board,* D.C.App., 302 A.2d 235 (1973). If the agency's decision is supported by substantial evidence, we must affirm its action even though we might have reached another result, for it is not the function or authority of the reviewing court to superimpose its opinion upon the legitimate action of an administrative agen-

---

**3.** D.C.Code 1973, § 4–526 (which was amended in both 1974 and 1975 in ways not here material, *see* D.C.Code 1976 Supp.) provided:

> Whenever any member coming under sections 4–521 to 4–535 completes five years of police or fires service and is found by the Commissioners to have become disabled due to injury received or disease contracted other than in the performance of duty, which disability precludes further service with his department, such member shall be retired on an

annuity computed at the rate of 2 per centum of his basic salary at the time of retirement for each year or portion thereof of his service: *Provided,* That such annuity shall not exceed 70 per centum of his basic salary at time of retirement: *Provided further,* That the annuity of a member retiring under this section shall be at least 40 per centum of his basic salary at time of retirement.

**4.** D.C.Code 1973, § 1–1510(3)(E).

cy. *Shay v. District of Columbia Board of Zoning Adjustment,* D.C.App., 334 A.2d 175 (1975); *Stewart v. District of Columbia Board of Zoning Adjustment,* D.C.App., 305 A.2d 516 (1973).

■ The record reveals that the medical evidence submitted to the Retirement Board clearly supported the finding that petitioner's hypersensitivity to smoke rendered him unable to perform firefighting duties, but did not impair his ability to assume a non-firefighting position in the department. Petitioner's respiratory condition was diagnosed by three physicians. Dr. Howard Yeager of the Board of Police and Fire Surgeons, testifying before the Retirement Board, concluded that petitioner was capable of performing non-firefighting duties despite his chronic asthmatic bronchial condition. Furthermore, we find no medical evidence in the record to support petitioner's claim that a normal office environment would aggravate his condition.[5]

Petitioner's contention that the evidence does not support the findings of the Retirement Board is without merit. The decision of the Board is supported by substantial evidence and as such must be affirmed. *Brooks v. District of Columbia Board of Appeals and Review,* D.C.App., 317 A.2d 864 (1974); *Carroll v. District of Columbia Board of Appeals and Review,* D.C.App., 292 A.2d 161 (1972).

The Retirement Board found that petitioner was not disabled for useful and efficient service in the grade or class of position he last occupied, namely, Private, Class I–A, and determined that he could perform non-firefighting duties at the same or a higher class of position with no reduction in pay. Consequently, he was not retired as disabled under § 4–521(2).

Petitioner contends that the Retirement Board and the BAR misconstrued the meaning of the word "disabled." He maintains that the phrase "disabled for useful and efficient service in the grade or class of position last occupied" found in § 4–521(2) refers to an occupational category defined by duties and responsibilities, *e. g.,* firefighter, rather than a category defined by rank or salary, or both, *e. g.,* Private, as argued by respondents.

■ The District of Columbia Administrative Procedure Act authorizes this court to decide all relevant questions of law, to interpret constitutional and statutory provisions, and to determine the meaning or applicability of the terms of any action.[6] The legislative history of the DCAPA shows a clear congressional intent that we employ the same standards for judicial review as other federal courts employ for the Federal Administrative Procedure Act, 5 U.S.C. § 706 (1970). *Wallace v. District Unemployment Compensation Board,* D.C.App., 294 A.2d 177 (1972); *Basiliko v. District of Columbia,* D.C.App., 283 A.2d 816, 818 (1971).

■ Although the ultimate responsibility for determining the correct interpretation of a statute rests with the courts "it is settled that the courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with enforcement of that statute." *Watergate Improvement Associates v. Public Service Commission,* D.C.App., 326 A.2d 778, 785 (1974). *See also Commissioner of District of Columbia v. Benenson,* D.C.App., 329 A.2d 437 (1974). As the Supreme Court stated in *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965):

> When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. "To sustain the

---

5. The court notes in passing that the Retirement Board's findings were borne out by the absence of any indication in the record that petitioner suffered any significant physical discomfort after his transfer to an office job in the Fire Department. In addition, there is at least some evidence that petitioner's physical condition was exacerbated by his own conduct, namely, smoking cigarettes.

6. D.C.Code 1973, § 1–1510(1).

Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Unemployment Comm'n v. Aragon,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136, 145. See also, e. g., *Gray v. Powell,* 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301; *Universal Battery Co. v. United States,* 281 U.S. 580, 583, 50 S.Ct. 422, 74 L.Ed. 1051, 1054.

Indeed, "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . . ." *Red Lion Broadcasting Co. v. F. C. C.,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). *Accord, New York State Department of Social Services v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). Thus, where an administrative agency's construction of a statute is reasonable and does not contravene the language or legislative history of the statute, it should be followed. *Harrison v. J. H. Marshall & Associates, Inc.,* D.C.App., 271 A.2d 404 (1970).

■ In drafting § 4–521(2), Congress tracked the existing definition of "disabled" found in the Federal Civil Service Retirement Act of 1926.[7] However, the legislative history of the 1926 Act does not disclose the precise meaning that Congress

attached to the phrase, "in the grade or class of position."

Respondents argue that an analogy can be made to that part of § 6 of the Civil Service Retirement Act of 1926 which deals with annuities for disabled employees. With the help of this analogy, respondents assert, it becomes clear that Congress indicated that the phrase "grade or class of position" relates to the level of monetary compensation offered rather than the occupational duties involved. Although we may see merit to this manner of argument, it is unnecessary to adopt this position in the absence of any legislative history that contradicts the interpretation of "disabled" by the Retirement Board and the BAR.[8]

In light of the absence of contradictory legislative history, or conflicting statutory terms, the court finds the Retirement Board's and the BAR's construction of § 4–521(2) reasonable with respect to the specific language of the statute. In addition, the public policy considerations implicit in the Board's interpretation of "disability" provide a rational basis for its construction of that section. Specifically, it is reasonable for respondents to interpret the retirement laws to discourage the retirement of District of Columbia personnel who, while disabled from the performance of certain duties, can perform useful and efficient service in other capacities within their respective departments without suffering any diminution in rank or salary.[9] Therefore,

---

7. *See* Police and Firemen's Retirement and Disability Act Amendments of 1957 (H.R. 6517), P.L. 85–157, 85th Cong., 1st Sess., 71 Stat. 391, now D.C.Code 1973, § 4–521(2); Civil Service Retirement Act of 1920, P.L. No. 215, 66th Cong., 2nd Sess., 41 Stat. 614, Section 5; Civil Service Retirement Act of 1926, P.L. No. 522, 69th Cong., 1st Sess., 44 Stat. 904, Section 6.

8. Petitioner cites *Cerrano v. Fleishman,* 339 F.2d 929 (2d Cir. 1964) in support of his interpretation of "grade or class of position." His reliance on *Cerrano* is inapposite. In *Cerrano,* the court considered a disabled employee's appeal from his involuntary retirement by the Civil Service Commission. The court rejected the claim that under the Civil Service Retirement Act, 5 U.S.C. § 2251(g), it was incumbent upon the government to find appellant another

job somewhere in the civil service at the same rank or salary, regardless of the duties that job might entail. In so ruling, the court made a gratuitous interpretation of "grade or class of position" inconsistent with that relied upon by respondents in the instant case. In the view of this court, *Cerrano* carries little weight in the determination of the issues presented here because its broad interpretation of 5 U.S.C. § 2251(g) is dicta and its facts are clearly distinguishable.

9. In so viewing respondents' public policy considerations as a rational basis upon which to interpret a statutory term, the court is in no way departing from prior decisional law in this jurisdiction that requires the retirement laws to be liberally construed in light of the humane purposes for which they were conceived. *See*

the court affirms the interpretation of § 4–521(2) by the Retirement Board and the BAR as applied in the instant case.

## THE 1973 RETIREMENT BOARD DECISION

■ In reviewing the 1973 Retirement Board decision, the court must again consider whether the Board's findings were based on substantial evidence and a correct interpretation of a statutory provision. The Board reconsidered petitioner's dismissal for disciplinary reasons, and sought to adduce further evidence on his psychological problems. Following a hearing, the Board set aside petitioner's dismissal and retired him pursuant to § 4–526 (D.C.Code 1973) on the grounds that his psychological problems predated his entry into the department and were aggravated by factors other than the performance of his occupational duties.

The court finds that there is substantial evidence in the record to support this decision. *Brooks v. District of Columbia Board of Appeals and Review, supra.* Petitioner was diagnosed as suffering from a personality disorder which existed prior to his service with the fire department.

Petitioner inferentially claims the existence of a causal relationship between his physical disabilities, *e. g.,* chronic asthmatic

bronchitis, and the subsequent deterioration of his emotional health. Although petitioner asserts that evidence of this causal relationship "lurks in the record," the court finds an absence of any such evidence. To accept petitioner's argument, the court would have to substitute fanciful speculation for the finding of the Retirement Board.

■ Petitioner also argues that the Retirement Board and the BAR misinterpreted the meaning of § 4–527 (D.C.Code 1973) in failing to retire petitioner under this section's more favorable monetary provisions.[10] He asserts that the factors contributing to the worsening of his mental health, specifically the stress caused by his mother's illness, romantic setbacks, and non-promotion within the fire department, should be considered aggravations incurred in the performance of duty within the meaning of this section. Finally, petitioner contends that when there is doubt as to whether an existing disease is duty-aggravated the Retirement Board should rule in favor of the claimant.

This court has rejected these arguments in two decisions with facts similar to the instant case. *Lewis v. District of Columbia Board of Appeals and Review,* D.C.App., 330 A.2d 253 (1974); *Johnson v. Board of Appeals and Review,* D.C.App., 282 A.2d

---

*Hyde v. Tobriner,* 117 U.S.App.D.C. 311, 329 F.2d 879 (1964); *Lynch v. Tobriner,* 237 F.Supp. 313 (D.D.C. 1965).

10. D.C.Code 1973, § 4–527 (which was amended in 1975 in ways not here material, *see* D.C. Code 1976 Supp.) provided:

(1) Whenever any member is injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty at any time after appointment and such injury or disease or aggravation permanently disables him for the performance of duty, he shall upon retirement for such disability, receive an annuity computed at the rate of 2½ per centum of his basic salary at the time of retirement for each year or portion thereof of his service: *Provided,* That such annuity shall not exceed 70 per centum of his basic salary at the time of retirement . . . . . .

(2) In any case in which the proximate cause of an injury incurred or disease contracted by a member is doubtful, or is shown to be other than the performance of duty, and such injury or disease is shown to have been aggravated by the performance of duty to such an extent that the member is permanently disabled for the performance of duty, such disability shall be construed to have been incurred in the performance of duty. The member shall, upon retirement for such disability, receive an annuity computed at the rate of 2½ per centum of his basic salary at the time of his retirement for each year or portion thereof of his service: *Provided,* That such annuity shall not exceed 70 per centum of his basic salary at the time of retirement, nor shall it be less than 66⅔ per centum of his basic salary at the time of retirement.

566 (1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1175, 31 L.Ed.2d 232 (1972). In those cases, both Lewis and Johnson had emotional problems of obscure origin that predated their government service. In addition, they argued the presence of duty-aggravated factors similar to those present in the instant case, *i. e.,* disciplinary problems in government service, job frustration, and marital difficulties. The court found that these factors did not constitute the type of aggravation required by § 4–527(2). Furthermore, those cases rejected the argument, made again by petitioner, that when the cause of disease is obscure, it is for the government rather than the claimant to show that the disease was not duty-aggravated.[11]

We therefore conclude that the 1973 Retirement Board decision and the 1974 BAR decision correctly interpreted and applied § 4–527(2).

*Affirmed.*

---

11. In *Johnson v. Board of Appeals and Review, supra,* at 570, the court explicitly rejected Johnson's reliance on *Blohm v. Tobriner,* 122 U.S.App.D.C. 2, 350 F.2d 785 (1965), and *Wingo v. Washington,* 129 U.S.App.D.C. 410, 395 F.2d 633 (1968), as controlling in this regard.