**Floyd H. ROBERTS, Petitioner,**

v.

**POLICE AND FIREMEN'S RETIRE-MENT AND RELIEF BOARD et al., Respondents.**

**No. 14080.**

District of Columbia Court of Appeals.

Argued Dec. 18, 1979.

Decided March 6, 1980.

---

2. See note 1, *infra*.

Charles Krikawa, Washington, D. C., for petitioner; Robert Cadeaux, Washington, D. C., was on the brief.

Margaret L. Hines, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondents.

Before KERN, MACK and PRYOR, Associate Judges.

PRYOR, Associate Judge:

On October 20, 1978, petitioner, an annuitant of the Metropolitan Police Department, was found by the Police and Firemen's Retirement and Relief Board (the Board) to have been restored in the years 1974 and 1975 to "an earning capacity fairly comparable to the [then] current rate of compensation of the position [occupied by petitioner] at the time of [his] retirement." D.C. Code 1973, § 4–530.[1] Pursuant to this statute, the Board ordered that annuity payments to the petitioner cease one year from the date of its determination.

On appeal, we are asked to consider whether the Board correctly found that petitioner's earning capacity had been restored in 1974 and 1975 so that his annuity

---

1. We are concerned with a statute which reads in pertinent part:

§ 4–530: *Recovery from disability or restoration to earning capacity—Earning capacity defined—Suspension of annuity—Restoration to duty.*

(1) If any annuitant retired under section 4-526 or 4–527, before reaching the age of fifty, recovers from his disability or is restored to an earning capacity fairly comparable to the current rate of compensation of the position occupied at the time of retirement, payment of the annuity shall cease . . . (3) one year from the date of determination that he is so restored, whichever is earlier. Earning capacity shall be deemed restored if in each of two succeeding calendar years the income of the annuitant from wages or self-employment or both shall be equal to at least 80 per centum of the current rate of compensation of the position occupied immediately prior to retirement. . . . .

should cease; and whether the Board erred in its decision not to reinstate petitioner's annuity in light of his subsequent loss of earning capacity. We hold that the Board committed no error in terminating the annuity, but that the case must be remanded for further consideration of petitioner's request for reinstatement of his annuity.

On July 29, 1956, petitioner Floyd Roberts was appointed to the D.C. Metropolitan Police Department. On June 30, 1963, petitioner was retired from the Department for a disability aggravated by the performance of duty. D.C. Code 1973, § 4–527. Upon retirement, appellant began receiving an annuity pursuant to D.C. Code 1973, § 4–527(2). Sometime thereafter, petitioner became employed as an automobile salesman. In January 1978, an investigation by the Internal Affairs Division of the Police Department revealed that petitioner's income for 1974 and 1975 exceeded eighty percent of the current rate of pay for the position from which he had been retired. This finding, if adopted by the Board, required cessation of annuity payments. D.C. Code 1973, § 4–530. On March 9, 1978, a letter was sent to the petitioner by the Board informing him of the Division's findings and that a hearing had been scheduled to decide the matter. Petitioner retained counsel and appeared before the Board at the specified time.

After reviewing the evidence introduced at the hearing which included the petitioner's income tax returns for the years in question, the report from the Internal Affairs Division, an evaluation of the 1974 and 1975 income tax returns of petitioner prepared by an accountant at petitioner's request, and testimony from the petitioner and representatives from the Internal Affairs Division, the Board found that petitioner's earning capacity had been restored to the extent referred to in D.C. Code 1973, § 4–530. The Board concluded that his annuity payment should cease on October 20, 1979, one year from the date of the Board's determination as provided by the statute. From this determination, petitioner appeals.

In concluding that the earning capacity of petitioner was at least eighty percent of the rate of compensation of the position he occupied immediately prior to retirement, the Board construed the word "income" as used in the statute to mean "gross income." [2] Petitioner challenges this statutory interpretation by the Board. It is petitioner's view that the term "income" refers to total earnings minus certain business deductions. Applying this interpretation petitioner proffers that while his "income" for 1974 exceeded the eighty percent mark, his "income" for 1975 fell below eighty percent of the then rate of compensation of the position occupied by him prior to retirement.

Petitioner's income tax return for the year 1974 indicates, and petitioner concedes, that his income from wages and other earnings was $27,627.00. The rate of compensation in 1974 of the position petitioner occupied at the time of retirement was $14,035.00 Eighty percent of that amount is $11,228.00. All are in agreement that in 1974, therefore, petitioner's "income" was in excess of the latter amount.

In 1975, petitioner was engaged in the same employment. His tax return for that year and the salary records of his employer indicate that in 1975, his earnings totaled $13,636.25. The rate of compensation in 1975 of the position petitioner occupied at the time of retirement was $14,877.00. Eighty percent of that amount is $11,901.60. Petitioner would have the Board deduct certain expenses he incurred in connection with his employment to arrive at what he alleges is his "real income" for 1975, $11,594.00. According to petitioner, these deductions were not reported on his 1975 income tax return because his taxes had al-

2. The applicable portion of Section 4–530 provides:

Earning capacity shall be deemed restored if in each of two succeeding calendar years the *income* of the annuitant from wages or self-employment or both shall be equal to at least 80 per centum of the current rate of compensation of the position occupied immediately prior to retirement. [Emphasis added.]

ready reached zero and no further deductions were necessary for tax purposes.

While not challenging the validity of deductions petitioner alleges he is entitled to, the Board rejected petitioner's argument that "income" refers to total earnings minus certain deductions such as those asserted by him. The Board determined that the statutory term "income" refers to "gross income." This is the gravamen of the dispute.

## II.

The legislative history of the Police and Firemen's Retirement and Relief Act, D.C. Code 1973, § 4–530, offers no indication of what Congress intended by the term "income." Enacted in 1957, (71 Stat. 396, Pub.L. No. 85–157) the Act's stated purpose was to provide benefits to police and fire persons comparable to those provided under the Civil Service Retirement Act Amendments of 1956. [S.Rep. No. 699, 85th Cong., 1st Sess. (1957)]. The Civil Service Retirement Act, however, gives no indication as to what Congress intended by the use of the word "income" in this context.

■ Absent any legislative direction on how to interpret its regulatory statute, the administrative agency charged with enforcing the statute has discretion to give meaning to the contents of that statute. In reviewing the Board's interpretation, this court will give great weight to any reasonable construction of a regulatory statute adopted by an agency charged with enforcing the statute, *Coakley v. Police and Firemen's Retirement and Relief Board*, D.C. App., 370 A.2d 1345, 1348 (1977), and uphold the Board's construction unless there are compelling indications that it is wrong. *Id.* at 1349 and cases cited therein.

■ In the instant case, the Board reviewed the evidence before it and concluded that the term "income" of an employee, as used in the statute, refers to "gross income." In the absence of contradictory legislative history, *Coakley, supra*, at 1349, this court finds the Board's interpretation of the statutory term "income" to be reasonable

and to flow rationally from its findings. Construing the term "income" to mean "gross income," as the Board did, is consistent with the use of the gross salary figure the statute employs in determining the base comparison. The statute commands that it is eighty percent of the gross salary of the position last held by the annuitant, *i. e.*, "the current rate of compensation," which is compared with that individual's present income. Put in another way, comparison is made under the statute of the annuitant's total compensation (gross income) from his present employment with eighty percent of the current rate of compensation (gross income) of the position occupied by the annuitant at the time of retirement.

■ Without passing on the issue of whether certain deductions would be allowable if the petitioner were self-employed, we conclude that the Board was correct in finding that the petitioner's income exceeded the eighty percent level for both the years 1974 and 1975.

## III.

Petitioner's second contention is that even if he exceeded the eighty percent earning limitation for both 1974 and 1975, it was error for the Board to proceed to terminate his annuity payments because in 1976 his income fell below the eighty percent limitation. This argument is grounded on the pertinent part of § 4–530 which provides:

> Nothing in this section shall preclude such member from having an annuity re-established . . . when his earning capacity is less than 80 per centum of the rate of compensation of the position occupied immediately prior to retirement *for any full year thereafter* . . . . [Emphasis added].

The Board interpreted the above language to mean that in order for an individual to have his annuity reestablished in the event that his earning capacity falls below the eighty percent mark, the member must wait one full year after the actual termination of his annuity payments before reapplying for further payments. Since the

statute expressly delays termination for one year, the effect of the Board's construction would delay the reestablishment of an annuity for two years. Given the humane purpose of the retirement laws, *Hyde v. Tobriner*, 117 U.S.App.D.C. 311, 313, 329 F.2d 879, 881 (1964); *Crawford v. McLaughlin*, 109 U.S.App.D.C. 264, 265, 286 F.2d 821, 822 (1960), this construction would seem to contravene the language and spirit of the statute.

██ In the instant case, the construction urged by the Board could result in an annuitant having to subsist upon a restricted income for one full year following the termination of his annuity payments, prior to his being able to petition the Board for reinstatement of his annuity. A construction more in harmony with the purpose and spirit of the statute, would enable one who has had his annuity payments terminated to reapply when his earning capacity for one year becomes again less than eighty percent of the rate of compensation of the position last occupied by the annuitant. In this way the annuitant could be reestablished during *any* full year occurring after a determination is made to cease payments, specifically, either during the one year "grace period" which Congress has allowed payments to continue, or during any succeeding year in which his earning capacity is less than eighty percent of the rate of compensation of the position occupied by the annuitant immediately prior to retirement.

The above interpretation is consistent with the legislative history of Public Law 87–350, enacted in 1961, amending the Civil Service Retirement Act to provide for restoration of disability annuity payments ". . . effective the first of the year following any calendar year in which his income from wages or self-employment or both is less than 80 percent of the current rate of pay of the position occupied immediately before retirement." 5 U.S.C.A. § 8337(e) (1967). The clear legislative intent of the amendment was to make annuity payments available when needed. Need is established by the eighty percent limit. When recommending the passage of Public

Law 87–350, the Chairman of the Civil Service Commission indicated, in a letter to Congressman Rayburn, that the payments were to be reinstated when there was need, *i. e.*, the annuitant's income went below the eighty percent level of the rate of pay of his position. He stated ". . . that the knowledge of annuity being available if needed would encourage the annuitant to return to gainful employment and earn his fullest capabilities without fearing a future loss of disability annuity should income producing capacity cease." Letter from John W. Macy, Chairman of the Civil Service Commission, to Congressman Rayburn, House Speaker, *reprinted in* [1961] U.S. Code Cong. & Admin.News, pp. 3176, 3177.

The Board, by construing the statute to require that an annuitant wait a year after having his rights to payment of annuity terminated, prior to his being eligible to petition for reinstatement, would make an annuitant reluctant to return to gainful employment. That is, he would fear that if his income producing capacity was found to have exceeded eighty percent of the rate of pay for his position, he could not petition for restoration of his annuity until an additional year lapsed.

D.C. Code 1973, § 4–530, in our view, must be construed to allow an annuitant to petition the Board for reestablishment of annuity as soon as his gross income has fallen below the eighty percent level for any full year subsequent to the Board's finding of restoration of earning capacity. Here, petitioner was entitled to apply for the reestablishment of his annuity any time after one full year had lapsed during which his income fell below the proscribed level.

Consistent with this holding, we remand this case to the Board for a determination of whether petitioner did indeed fall below the eighty percent level in 1976 and was therefore entitled to the reestablishment of his annuity.

*So ordered.*