**Herman HAYNIE, Petitioner,**

v.

**DISTRICT OF COLUMBIA POLICE AND FIREFIGHTERS' RETIREMENT AND RELIEF BOARD, Respondent.**

**No. 93–AA–2.**

District of Columbia Court of Appeals.

Submitted March 10, 1994.
Decided April 18, 1994.

---

Frederic W. Schwartz, with whom Robert Cadeaux, Washington, DC, was on brief, for petitioner.

Rosalyn Calbert Groce, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel

at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, DC, were on the brief, for respondent.

Before FERREN *, Acting Chief Judge, and KING and SULLIVAN, Associate Judges.

FERREN, Acting Chief Judge:

Petitioner appeals from a decision of the District of Columbia Police and Firefighters' Retirement and Relief Board ("Board") ruling, under D.C.Code § 4–615(a) (1988), that his pre-existing condition, congenital spinal stenosis, and not the slip-and-fall injury he sustained while on duty, caused the disability that made him unfit for further duty with the Metropolitan Police Department. Petitioner contends that (1) a congenital condition is not an "injury received or disease contracted other than in the performance of duty," within the meaning of § 4–615(a), and that (2) the Board's finding as to the part petitioner's spinal stenosis played in his disability was not supported by substantial evidence of record. We disagree with both contentions and thus affirm.

I.

Petitioner joined the Metropolitan Police Department in 1969. While on duty on March 17, 1990, petitioner was leaving his patrol car to help a victim of a stabbing when he slipped and fell on wet pavement. He injured his ankle, shoulder, and back.

Two days later, petitioner reported to the Police and Fire Clinic because his injuries had become increasingly painful. Dr. Villa–Real examined petitioner, scheduled him for radiology and Magnetic Resonance Imaging (MRI) exams, and placed him on sick leave. Dr. Press conducted the radiology examination on May 25, and concluded that petitioner had some "generalized demineralization of the bones" of his spine. On June 22, Dr. Mark conducted the MRI exam and found that petitioner was suffering from congenital

* Judge FERREN was an Associate Judge of this court at the time of argument. His status changed to Acting Chief Judge on March 18, 1994.

spinal stenosis, a condition characterized by the abnormal narrowing of the spine. Dr. Mark's report explained that "[n]o evidence of disc herniation or acquired spinal stenosis is noted."

On July 11, Dr. Linehan, an orthopaedic surgeon, examined petitioner. Although Dr. Linehan confirmed that petitioner's x-rays showed a narrowing of his spine, the doctor concluded that petitioner's "symptoms are not those of spinal stenosis at present." Dr. Linehan prescribed a different anti-inflammatory medication and continued to follow petitioner's condition through several follow-up consultations over the next few months. The follow-up forms submitted to the Police and Fire Clinic from the July 25, August 22, and September 12 consultations with Dr. Linehan listed spinal stenosis as the diagnosis and stated that petitioner's prognosis was poor. During the September 12 examination, Dr. Linehan ordered electrodiagnostic, EMG, and nerve conduction studies. Dr. Blazina performed these tests on September 18 and concluded that petitioner had damage at the root of his vertebrae where the lumbar spine meets the sacral spine, a finding "consistent with a lumbosacral spinal stenosis." On October 10, Dr. Linehan concluded that petitioner showed "subjective symptoms of spinal stenosis."

Petitioner reported to the clinic on December 7, 1990 where Dr. Garmon, a Medical Officer at the Police and Fire Clinic, examined him. Dr. Garmon told petitioner to report for light duty. On December 20, petitioner experienced painful back spasms and numbness in his left leg. He reported to the clinic the next day, and Dr. Garmon placed him on sick leave.

Dr. Dennis conducted an independent medical evaluation on February 27 and confirmed that petitioner "ha[d] symptomatic spinal stenosis precipitated by a work injury occurring in 1990." He recommended that the Board place petitioner on disability retirement.

Petitioner returned to limited duty after a March 8 clinic visit. He reported to the clinic on April 2, however, complaining of painful back spasms and numbness in his left leg. Dr. Garmon examined petitioner and placed him on sick leave. Petitioner returned to limited duty on July 11, but again experienced back pain. He reported to Dr. Garmon at the clinic, who placed him on sick leave on July 15. Petitioner did not return to work after July 15, 1991.

The Board of Police and Fire Surgeons recommended petitioner to the Retirement Board for disability retirement on December 12, 1991. The Summary Surgical Service Report submitted by the Board of Police and Fire Surgeons recommended disability with a functional impairment of ten percent, based on a diagnosis of "1. Chronic lumbar strain; 2. Recurrent S1 radiculopathy; and 3. Congenital spinal stenosis." At the hearing before the Board on April 23, 1992, Dr. Garmon explained these conditions in greater detail:

The chronic lumbar strain refers to an ailment involving his lumbar musculature which is actually recurrent producing pain and discomfort, aggravated by [inclement] weather, increased activities, bending, lifting, pushing and pulling, that sort of thing. The current S-1 radiculopathy refers to nerve irritation at the L-5, S-1 level in the back, basically caused, we feel caused by an impingement there either from a spur, possibly a bulging disk or the fact that there is some congenital stenosis in the area, tightness or less room for the nerve endings to exit. And three, there's a congenital spinal stenosis. Congenital, of course, meaning it's something that's birth related. The canal, spinal canal, is narrowed more than usual, more than what would be normal.

Dr. Garmon also explained that there was a 60 to 70 percent likelihood that petitioner would not have had the symptoms he reported from his fall if he had not been inflicted with spinal stenosis.[1]

---

1. The following colloquy occurred at the Board hearing:

    MR. MCDOUGALD: And are you in a position to say one way or the other that in the absence of the congenital spinal stenosis that the officer would have had the chronic lumbar strain as a result of the injury?

The Retirement Board adopted the recommendation of the Board of Police and Fire Surgeons and found that petitioner was disabled from useful and efficient service with a functional impairment of ten percent as a result of (1) chronic lumbar strain, (2) recurrent S1 radiculopathy, and (3) congenital spinal stenosis. Furthermore, the Board accepted Dr. Garmon's conclusion that petitioner's on-duty slip and fall injury merely aggravated his pre-existing spinal stenosis and, accordingly, rejected Dr. Dennis's finding that the on-duty injury precipitated the spinal stenosis. The Board concluded:

The Board further finds that member's condition is the result of his congenital spinal stenosis. This condition present from birth, characterized by a spinal canal that is narrowed more than normal, which did not allow for swelling of the sac around the cord, resulted in member experiencing pain. The Board accepts the testimony of Dr. Garmon that but for the spinal stenosis member would not have the present symptomatology and accepts his opinion that the reticular disorder may not have evidenced itself with a normal spine under similar conditions....

The Board also finds that member's work related injury was an aggr[av]ation of his pre-existing condition which has resulted in his current symptomology.... Accordingly, the Board concludes that member's disability was incurred other than in the performance of duty, pursuant to section 4–615, D.C.Code (1981).

On December 4, 1992, the Board retired petitioner on a disability incurred other than in the performance of duty, under D.C.Code §§ 4–607(2), –615(a).

## II.

■ Petitioner contends that his spinal stenosis, a congenital condition, is not an "injury received or disease contracted other than in the performance of duty" within the meaning of D.C.Code § 4–615(a), which reads:

[W]henever any member coming under §§ 4–607 to 4–630 completes 5 years of police or fire service and is found by the Mayor to have become disabled due to *injury received or disease contracted other than in the performance of duty,* which disability precludes further service with his [or her] department, such member shall be retired on an annuity computed at the rate of 2 per centum of his [or her] average pay for each year or portion thereof of his [or her] service....

(emphasis added). Petitioner argues that D.C.Code § 4–616(a), entitling him to a higher disability annuity, should apply instead. It provides:

[W]henever any member is *injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty* at any time after appointment and such injury or disease or aggravation permanently disables him [or her] for the performance of duty, he [or she] shall upon retirement for such disability, receive an annuity computed at the rate of 2½ per centum of his [or her] average pay for each year or portion thereof of his [or her] service....

D.C.Code § 4–616(a) (emphasis added).

The Police and Firefighters Retirement and Disability Act, D.C.Code §§ 4–601 *et seq.,* does not expressly provide for a situation like petitioner's where a pre-existing "congenital condition" is aggravated by an on-duty injury. D.C.Code § 4–615(a) governs situations where an "injury" is received, or a "disease" is contracted, other than in the performance of duty. D.C.Code § 4–616(a) governs situations where [1] an "injury" is

---

DR. GARMON: Well, I try to indicate that. Again, I have to go back to that statement that I felt that I rendered here about the assessment that I felt that the revelation of the congenital spinal stenosis by the MRI complicates the situation as it indicates that there was a possible promistry force back and a reticular disorder which may not have evidenced itself with the normal spine under similar conditions.... *So what I'm trying to say is that under similar conditions, a person with a normal spine possibly would not have had the symptoms that he's having.* [Emphasis added.]
MR. MCDOUGALD: Possibly.
DR. GARMON: Right.
CHAIRPERSON HICKS: Would that be most likely possible or what?
DR. GARMON: Most likely possible I would say, greater than 60 percent, 70 percent, okay.

received, or a "disease" is contracted, in the performance of duty or where [2] an "injury" received or "disease" contracted in the performance of duty is aggravated by duty. The question before us is whether the Board properly construed the Act when it determined that petitioner's situation—involving a pre-existing congenital condition—fits within § 4–615(a) as an injury or disease contracted "other than in the performance of duty," rather than under § 4–616(a) as an injury or disease contracted "in the performance of duty" or "aggravated by duty." We conclude that the Board's construction that § 4–615(a) applies here is reasonable.

" 'Absent any [l]egislative direction on how to interpret its regulatory statute, the administrative agency charged with enforcing the statute has discretion to give meaning to the contents of the statute.' " *Ridge v. Police & Firefighters Retirement & Relief Bd.,* 511 A.2d 418, 426 (D.C.1986) (quoting *Roberts v. Police & Firemen's Retirement & Relief Bd.,* 412 A.2d 47, 50 (D.C.1980)). "In reviewing the Board's interpretation, this court will give great weight to any reasonable construction of a regulatory statute adopted by an agency charged with enforcing the statute ... and uphold the Board's construction unless there are compelling indications that it is wrong." *Roberts,* 412 A.2d at 50 (citing *Coakley v. Police & Firemen's Retirement & Relief Bd.,* 370 A.2d 1345, 1348 (D.C.1977)).

The District argues that the term "disease" as used in D.C.Code § 4–615(a) includes pre-existing congenital conditions and that this interpretation is well within the common meaning and ordinary sense of the word "disease." *See Barbour v. District of Columbia Dep't of Employment Servs.,* 499 A.2d 122, 125 (D.C.1985) ("Words of a statute must be construed by their common meaning and their ordinary sense."); *In re Estate of Shutack,* 469 A.2d 427, 429 (D.C.1983) ("The words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them."). Webster's Dictionary, for example, defines "disease" as:

> an impairment of the normal state of the living animal or plant body or of any of its components that interrupts or modifies the

performance of the vital functions, being a response to environmental factors (as malnutrition, industrial hazards, or climate), to specific infective agents (as worms, bacteria, or viruses), *to inherent defects of the organism* (as various genetic anomalies), or to combinations of these factors.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 648 (1986) (emphasis added). Thus, in administering the statute, the Board could reasonably interpret the word "disease" to encompass impairments of the body inherent at birth, such as petitioner's congenital spinal stenosis.

Because it is not disputed that petitioner's spinal stenosis is congenital, petitioner's disease was undoubtedly "contracted other than in the performance of duty," as disability retirement under § 4–615(a) requires. Indeed, according to *Szewczyk v. District of Columbia Police & Firefighters Retirement & Relief Bd.,* 633 A.2d 1 (D.C.1993), D.C.Code § 4–615(a) unquestionably would have applied had petitioner's spinal stenosis been "degenerative." *Szewczyk,* 633 A.2d at 2. Petitioner offers no meaningful distinction between a "congenital" and a "degenerative" disease and, in any event—if such distinction exists—suggests no compelling policy reason to treat congenital conditions differently from degenerative conditions. *See also Roberts,* 412 A.2d at 50 (this court must have compelling reasons to overturn the Board's interpretation of the statute it administers).

In light of congressional intent to limit awards of disability retirement to situations where "activity in the line of duty is determined to be the proximate cause of disability," H.R.REP. No. 155, 96th Cong., 1st Sess. pt. A, at 21 (1979), we cannot find any reason to treat "congenital" conditions differently from "degenerative" ones. *See Szewczyk,* 633 A.2d at 2. We conclude, accordingly, that the Board reasonably construed the Police and Firefighter's Retirement and Disability Act by treating petitioner's pre-existing congenital condition as a "disease contracted other than in the performance of duty" under § 4–615(a), rather than as a disease contracted "in the performance of

duty" or "aggravated by such duty" under § 4–616(a).

## III.

■ Petitioner also contends that the Board's finding about the relationship of petitioner's spinal stenosis to his disability was not supported by substantial evidence of record. *See Allen v. District of Columbia Police & Firefighters' Retirement & Relief Board,* 528 A.2d 1225, 1229 (D.C.1987) (citing D.C.Code § 1–1510(a)(3)(E) (1981)). We examine the record for "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Allen,* 528 A.2d at 1229 (citing *Perkins v. District of Columbia Dep't of Employment Servs.,* 482 A.2d 401, 403 (D.C.1984)) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). If we conclude that the Board's findings are supported by substantial evidence, we "must accept those findings, even though there may also be substantial evidence in the record to support a contrary finding." *Baumgartner v. District of Columbia Police & Firemen's Retirement & Relief Bd.,* 527 A.2d 313, 316 (D.C.1987).

In this case, the Board's decision is supported by substantial evidence in the record. Dr. Garmon testified that petitioner's on-duty slip and fall injury merely aggravated his pre-existing spinal stenosis and that petitioner probably would not have had the symptoms he reported from his fall had he not been inflicted with spinal stenosis. See *supra* note 1. The Board was certainly entitled to credit this testimony and to reject Dr. Dennis's conclusion that petitioner's on-duty injury precipitated the spinal stenosis.

*Affirmed.*