James E. BREEN, Petitioner,

v.

DISTRICT OF COLUMBIA POLICE AND FIREFIGHTERS RETIREMENT AND RELIEF BOARD, Respondent.

No. 94–AA–360.

District of Columbia Court of Appeals.

Submitted March 20, 1995.

Decided June 15, 1995.

Frederic W. Schwartz, Jr. and James W. Taglieri, Washington, DC, were on the brief, for petitioner.

Erias Hyman, Acting Corp. Counsel at the time the memorandum was filed, and Charles L. Reischel, Deputy Corp. Counsel, and Martin B. White, Asst. Corp. Counsel, Washington, DC, were on the memorandum in lieu of brief, for respondent.

Before FERREN, STEADMAN and KING, Associate Judges.*

PER CURIAM:

Petitioner James E. Breen was a firefighter with the District of Columbia Fire and Emergency Medical Department for over thirteen years. He seeks review of a decision and order of the Police and Firefighters Retirement and Relief Board ("Board"), in which that agency determined his retirement annuity. Petitioner specifically contends that the percentage of disability criteria used by the Board to determine his annuity entitlement, pursuant to D.C.Code § 4–616(e)(2)(A–D) (1994), was not supported by substantial evidence. We agree with petitioner and remand the case for further proceedings consistent with our opinion.

Breen was appointed to the Fire Department on June 9, 1980. At some time during the performance of his duties as a firefighter, Breen sustained a severe back injury. On August 10, 1993, having found that Breen was permanently disabled with a functional impairment of twenty (20) percent based on a diagnosis of status post lumbar laminectomy with residuals, the Board of Surgeons referred Breen's case to the Board for consideration of disability retirement. After a hearing on January 18, 1994, the Board concluded that petitioner's back injury was incurred in the performance of duty, pursuant to § 4–616, and that his disability rendered him incapable of performing useful and efficient service in his assigned firefighter duties with the Department, pursuant to D.C.Code § 4–607(2) (1994).[1] The Board's inquiry focused on determining petitioner's percentage of disability, pursuant to § 4–616(e)(2)(B). Finding Breen to be 61% disabled, the Board

---

* Former Senior Judge Gerard D. Reilly was a member of the panel to which this case was originally submitted. Upon his death, Judge Steadman was selected by lot to replace him. Judge Reilly had authored an opinion for the panel that was scheduled for release the day following his death. That opinion has been adopted verbatim as the per curiam opinion of the reconstituted panel.

1. The Board also accepted the Board of Surgeon's stated assessment of petitioner's disability (discussed *supra*).

held that he was entitled to an annuity of $15,834.38, pursuant to § 4–616(e)(2)(D). Had the Board determined that petitioner was more than 61% disabled, he would have been entitled to a larger annuity.

Our standard of review is governed by the D.C. Administrative Procedure Act which requires us "[t]o hold unlawful and set aside any [agency] action or findings and conclusions" not supported by substantial evidence. D.C.Code § 1–1510(a)(3)(E) (1992). "Therefore, [this] court must consider whether the agency findings are supported by reliable, probative, and substantial evidence in the record, and whether the conclusions reached by the agency flow rationally from these findings." *Szego v. Police & Firefighters Retirement & Relief Board,* 528 A.2d 1233, 1235 (D.C.1987) (citation omitted); *see also* D.C.Code § 1–1509(e) (1992); *Walsh v. District of Columbia Police & Firefighters Retirement & Relief Board,* 523 A.2d 562, 565 (D.C.1987) (this court "must review the record as a whole" in order "to assure that the Board's decision did not rely on unsupported findings") (citations omitted).

In determining petitioner's percentage of disability, the Board was required to give "due regard" to the following factors:

(i) The nature of the injury or disease;

(ii) The percentage of [physical] impairment reported [by the Board of Surgeons] pursuant to subparagraph (A) of this paragraph;

(iii) The position in the Metropolitan Police force or the Fire Department of the District of Columbia held by the member immediately prior to his retirement;

(iv) The age and years of service of the member; and

(v) Any other factors or circumstances which may affect the capacity of the member to earn wages or engage in gainful activity in his disabled condition, including the effect of the disability as it may naturally extend into the future.

D.C.Code § 4–616(e)(2)(B) (1994). Moreover, § 4–616(e)(2)(D) states that: "The annuity of a member who is retired under this subsection shall be 70% of his basic salary at the time of retirement multiplied by the per-

centage of disability for such member as determined in accordance with subparagraph (B) of this paragraph, except that such annuity shall not be less than 40% of his basic salary at the time of retirement." D.C.Code § 4–616(e)(2)(D) (1994). Taking these provisions into account, the Board used the following formula to calculate petitioner's annuity:

$$(A - B)/A = C \times D = E \text{ where}$$

A = current salary for the position held by petitioner (pre-injury) = $37,083

B = average salary for the positions petitioner has the capacity to occupy (post-injury) = $14,413

C = the percentage of disability = 61%

D = 70% of petitioner's basic salary = $25,958

E = the amount of the annuity = $15,834.38.

Although the Board's findings regarding factors A and D are supported by substantial evidence in the record, we deem its findings concerning factor B (and therefore factors C and E) fall below the requisite substantial evidence threshold.

In deriving petitioner's percentage of disability (factor C), the Board took the average salary of the five positions that petitioner had the capacity to occupy based upon the availability of jobs in the D.C. Metropolitan area for which he met the physical, educational (or training) and experience requirements (factor B) and subtracted this average salary from petitioner's current salary (factor A) and then divided this amount (representing petitioner's loss of earning capacity as a result of his injury) by his current salary (factor A). In discussing factor B the Board stated the following in its findings of fact:

The Board considered [appellant's] limitations with regard to functioning in other employment. The record shows that [appellant] completed high school and held other occupations such as forklift operator and rental car driver before joining the D.C. Fire [Department]. The Board concludes that [appellant] is able to seek and secure employment other than with the Department. Current positions and salaries [appellant] has the capacity to occupy:

1. PBX Operator — $14,400.00
2. Reservations Agent — $14,400.00
3. Front Desk Clerk — $17,664.00
4. Over, Short & Damage Clerk — $16,000.00
5. Telephone Solicitor — $ 9,600.00

[Taken from D.C. Department of Employment Services Job Bank, February 1, 1994.] [2]

In attempting to justify its findings regarding factor B, the Board argues that it "could reasonably infer, absent evidence to the contrary, that [petitioner] possessed basic, commonly held job skills such as the ability to use a telephone, communicate in English, follow directions and simple training programs, deal with co-workers and members of the public without becoming violent, etc." based upon the fact that "[petitioner] was a high school graduate and had held a variety of jobs including serving as a firefighter for over ten years." The Board further states that it "could simply infer that [petitioner] was capable of holding a variety of low skill jobs typically held by persons without specialized training or skills." However, contrary to the Board's assertions, the record does not provide a sufficient evidentiary basis for such inferences.

First of all, the record does not disclose *any* of the "physical, educational (or training), and experience requirements" for *any* of the five job positions that the Board concluded petitioner had the capacity to occupy. Despite the Board's implication to the contrary, the record contains no indication whatsoever that the five jobs it enumerated require merely "low" or "basic" skills and that applicants for employment in such occupations do not have to acquire any "specialized training or skills." Moreover, even if the record did disclose that such jobs required only certain basic skills *and* gave examples of what these were, the Board's factual findings would still be unsupported by substantial evidence—because the record contains insufficient evidence that petitioner has the education, the experience or the current physical ability to occupy any of the stated job positions. To the contrary, medical testimony in the record indicates that petitioner currently lacks the physical ability to do any of these jobs for more than a week or two without exacerbating his back injury.[3] And while a high school diploma *might* provide enough academic background for such jobs, petitioner's employment history (petitioner never did desk or office work according to the record, but had earned his living at different times as a forklift operator, rental car driver and firefighter) plainly fails to show that he possesses the requisite experience to occupy any of these five desk jobs.

In short, the record reveals that after the formal hearing and the issuance of a decision holding that petitioner was only partially disabled because a publication of the Department of Labor (never mentioned at the hearing) listed some jobs for which the Board found petitioner qualified, it never did provide him when this decision was contested with the right under the Administrative Procedure Act, *supra* at 1–1509(b) to "submit rebuttal evidence and to conduct such cross-examination as may be required for a full, and true disclosure of the facts." The Board does not dispute this procedural defect, but argues that petitioner waived his right to raise this point because in its view the motion for reconsideration did not challenge those matters concerning which the Board took judicial notice.

---

2. In a note appearing later in its findings of fact, the Board states: "[T]his figure [$14,413, factor B] represents the availability of jobs in the D.C. Metropolitan area (including some permanent part-time positions), for which petitioner meets the physical, educational (or training), and experience requirements."

3. Dr. Gangagee Balkissoon, who signed the Board of Surgeons evaluation concerning petitioner's medical condition and who offered the only medical testimony at the hearing, gave the following opinion regarding petitioner's current job-related physical limitations:

> He can do most things I guess. Sit in the chair, answer the phone, he can do those things. Take messages. He can run errands. He can do those sort of things. But I don't think he can do it for a significant period of time.
>
> [Question from the Board]: You mean for a full eight hours or __?
>
> Well, you know, for weeks on end. I think he eventually will go back in his sick-leave status with exacerbation of the symptom.

It is one thing, however, to take judicial notice of job categories in an official government publication, but quite another to leap to the conclusion that a particular person like petitioner was suited for employment in such categories without offering evidence at an adversary proceeding to back up this assumption. The mere fact that a medical witness had previously testified that petitioner "could do a number of things," such as dressing, feeding, washing himself, and walking with a cane, plainly does not suffice to prove that petitioner was employable or had the physical capacity to work steadily in any of the occupations the Board selected from the handbook from which it took judicial notice.

*Reversed and remanded for further proceedings consistent with this opinion.*