**Donald E. LONG, Petitioner,**

v.

**DISTRICT OF COLUMBIA POLICE & FIREFIGHTERS RETIREMENT & RELIEF BOARD, Respondent.**

Nos. 97–AA–70, 97–AA–572.

District of Columbia Court of Appeals.

Argued Nov. 3, 1998.

Decided April 29, 1999.

Frederic W. Schwartz, Jr., with whom James Taglieri, Washington, DC, was on the brief, for petitioner.

Sheila Kaplan, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before STEADMAN, SCHWELB, and RUIZ, Associate Judges.

SCHWELB, Associate Judge:

Retired Firefighter Donald E. Long has asked this court to review a decision by the District of Columbia Police and Firefighters Retirement and Relief Board (the Board). The Board rejected Long's application for a pension based on the higher level of benefits provided by D.C.Code § 4–616 (1994) for firefighters injured in the line of duty. Instead, the Board awarded Long the lower level of benefits available pursuant to D.C.Code § 4–615 for injuries not attributable to his work.[1] In this court, Long challenges the Board's finding that his injuries were not incurred in the line of duty, and he contends that his benefits were calculated incorrectly. We affirm the Board's decision that Long is entitled only to benefits for injuries not attributable to his work, but we remand with directions to the Board to recalculate those benefits.

## I.

Long began his career as a firefighter on June 9, 1980. During the twelve years that

---

1. This case is before us for the second time. The Board initially acted on Long's claim on May 13, 1994. Long filed a petition for review, and on June 15, 1995, in an unpublished order, we remanded the case for recalculation of Long's pension in conformity with *Breen v. District of Columbia Police & Firefighters Ret. & Relief Bd.*, 659 A.2d 1257 (D.C.1995) (per curiam). On December 23, 1996, the Board issued additional findings on remand. On January 10, 1997, the Board entered its final order. It is Firefighter Long's petition for review of that final order that is now before the court.

followed, Long had several accidents while on duty. Specifically, Long fell from a fire truck, injured himself while jumping off an apparatus, slipped and fell on a wet staircase, and injured his back lifting and pulling heavy objects. Firefighter Long's final on-duty accident occurred in 1992, when he was sliding down a fire pole. He was never able to resume his duties after that accident.

Dr. Alexander Ukoh, a member of the Board of Surgeons, testified that Long suffers from two congenital conditions which can cause back pains: spina bifida occulta and sacral meningomyelocele. According to Dr. Ukoh, these conditions predispose Long to "... back injuries and back pains that could be excessive very frequently with mild injuries." The Board found that Long's physical disability prevented him from continuing either full or limited duties as a firefighter. The Board further found that Long's disability resulted from the combined effects of the congenital conditions from which he suffered and the accidents that occurred while he was on duty.

## II.

We must affirm the Board's decision if it is supported by substantial evidence. See Szewczyk v. District of Columbia Police & Firefighters Ret. & Relief Bd., 633 A.2d 1, 1 (D.C.1993) (per curiam); Baumgartner v. Police & Firemen's Ret. & Relief Bd., 527 A.2d 313, 316 (D.C.1987). Long presented evidence tending to show that he was disabled by on-duty injuries, and it was then incumbent upon the Board to rebut the inference of causation. See Croskey v. District of Columbia Police & Firefighters' Ret. & Relief Bd., 596 A.2d 988, 991 (D.C.1991); Batty v. District of Columbia Police & Firefighters Ret. & Relief Bd., 537 A.2d 204, 205 (D.C. 1988) (per curiam). The ultimate burden of persuasion, however, remains on Long. Lamphier v. District of Columbia Police & Firefighters' Ret. & Relief Bd., 698 A.2d 1027, 1032 (D.C.1997).

The Board could reasonably find, on the basis of Dr. Ukoh's testimony, that Long's disability was caused by a combination of Long's pre-existing congenital conditions and the accidents that he incurred on the job. "[W]hen the duty related injury aggravates a pre-existing non-duty related injury with the result that the pre-existing injury or condition still contributes to the disability, a claimant is not entitled to the higher level of benefits." Croskey, supra, 596 A.2d at 989 (citing Allen v. District of Columbia Police & Firefighters' Ret. & Relief Bd., 528 A.2d 1225 (D.C.1987)); see also Haynie v. District of Columbia Police & Firefighters' Ret. & Relief Bd., 640 A.2d 188, 192–93 (D.C.1994). Accordingly we conclude that the Board's decision as to the proper level of benefits is supported by substantial evidence.

## III.

In a motion for reconsideration filed following the Board's order on remand, Long claimed for the first time that he should have received supplemental benefits for the period between the Board's original order of May 13, 1994, and its final order of January 10, 1997. Long's theory was that because jobs that he could have filled had not yet been identified during that period, he was entitled to benefits without any consideration of amounts he could theoretically have earned.

The applicable regulation provides that a petition for reconsideration based in whole or in part on new evidence must be accompanied by an affidavit "to the effect that the petitioner could not, with due diligence, have known or discovered the new matter prior to the date the case was presented to the Board for decision." See 7 DCMR § 2526.2 (1986). Long failed to file such an affidavit or make the required showing, and the Board did not abuse its discretion by denying his motion for reconsideration. Moreover, Long was employed during the relevant period, and he was not entitled to a pension based upon the

theory that he was unable to work and had no earning capacity.

## IV.

■ Finally, Long challenges the Board's computation of his earning potential outside the Fire Department, which was part of the Board's formula for computing the benefits to which he was entitled. The percentage of disability is calculated with due regard to "[a]ny other factors or circumstances which may affect the capacity of the member to earn wages or engage in gainful activity in his disabled condition." D.C.Code § 4–616(e)(2)(B)(v). The regulations establish a formula for determining the amount of the annuity,[2] and one figure in that calculus is "[t]he basic salary for the position [the fire-fighter] has the capacity to occupy while in disability retirement." 7 DCMR § 2515.3(b)(2). We conclude that in this case, the Board's estimate of Long's potential "basic salary" was not supported by substantial evidence.

· After the hearing on remand, the Board found that jobs which Long was capable of performing included bank teller, receptionist, school crossing guard, and fast food worker. Utilizing the Department of Employment Services Job Bank bulletin of June 3, 1996, the Board determined the salary for each of these positions, and computed Long's annual earning capacity as $16,971.68, which was the average of those salaries. At the hearing, Long's attorney had agreed that his client was capable of performing "light and sedentary jobs other than the ones requiring computer skills or typing," but had objected that "some of [the positions] are ten hours or twenty hours a week and that should be taken into consideration in computing any annuity."

Three of the positions utilized by the Board in its calculations—bank teller, peak time bank teller, and school crossing guard—are part-time jobs. The Board calculated Long's potential salary in these jobs by combining the part-time hourly rate and a forty hour work week. In other words, the Board treated these part-time positions as full-time jobs, and assumed that if Long could earn a specified salary for say, ten hours per week, he could earn money at the same rate for thirty more hours each week.

There was no evidence before the Board that full-time positions for crossing guard or peak time teller actually exist. *See* 7 DCMR § 2515.2(e)(4) (jobs "shall exist in the open labor market in the commuting area—the Washington Metropolitan area—in order for employment to be deemed available"). Part-time positions may obviously occupy an employee's prime working hours, and this is likely to make it difficult for the employee to obtain additional work at the same rate of pay to complete a full-time schedule. The conversion of these part-time positions had an adverse impact upon Long's annuity, because the hourly wages associated with these positions were somewhat higher than the wages for the full-time jobs considered by the Board.[3] If only the genuinely full-time positions had been included in the calculation, the Board's estimate of Long's earning potential would have decreased from $16,971.58 to $14,110, and Long therefore would have received a corresponding increase in his pension.

---

2. According to 7 DCMR § 2515.3(e), $(A–B)/A = C$, and $C \times D = E$ where:

   A = current salary for Long's pre-injury position

   B = salary for the position Long has the capacity to occupy

   C = percentage of disability

   D = 70% of Long's basic salary at the time of retirement

   E = amount of the annuity (may not be less than 30% of basic salary at the time of retirement)

3. Long claims that the annual salary for each of these jobs should have been based on what he could earn during a year while working part-time, which would have decreased his earning potential drastically. Long acknowledges, however, that he was capable of working full-time, and it appears that Long was, in fact, working full-time at his wife's business. Long's pension cannot rationally be predicated on the theory that Long could work only a limited number of hours per week when he was in fact able to work full-time.

We conclude that the Board's calculation of the benefits to which Long is entitled was based on an unsupported and unpersuasive assumption regarding the convertibility of part-time positions, into full-time positions. Accordingly, we remand the case to the Board for recalculation of Long's annuity in a manner not inconsistent with this opinion.[4]

*So ordered.*[5]

4. In accordance with what appears to be its normal practice of averaging five jobs which the retiree has the capacity to perform, the Board may of course substitute proper positions for the three part-time positions it previously used.

5. In this court Long also raises a number of other objections to the Board's calculation of his earning capacity. He contends, for example, that despite his lack of experience the Board attributed to him the capacity to earn a salary at the top of the scale for a peak-time bank teller, when the regulations point instead to the "basic salary." *See* 7 DCMR § 2515.3(b)(2). This objection, as well as others of a comparable nature, were not raised before the Board, and therefore are not properly before us. *See, e.g., Rafferty v. District of Columbia Zoning Comm'n*, 583 A.2d 169, 178 (D.C.1990).

Long asserted at oral argument before this court that the procedures utilized by the Board made it difficult or impossible for him to make timely objections and to preserve his claims. Having failed to challenge the Board's procedures upon this ground in his brief, Long has waived this claim. *See, e.g., Ramos v. United States*, 569 A.2d 158, 162 n. 5 (D.C.1990) (citing D.C.App. R. 28(a)(3), (4), (5)).

We also note that one of the jobs Long claims not to be able to perform—that of fast food worker—pays only $10,920 per year, far less than the amount the Board estimated that Long could earn. If the Board had excluded the position of fast food worker from its analysis, then the calculation of Long's earning capacity would have been higher, and his pension would have been correspondingly lower.