Angela JEWELL, Petitioner,

v.

DISTRICT OF COLUMBIA POLICE AND FIREFIGHTERS RETIREMENT AND RELIEF BOARD, Respondent.

No. 96–AA–1741.

District of Columbia Court of Appeals.

Argued Sept. 28, 1999.
Decided Oct. 28, 1999.

Frederic W. Schwartz, Jr., with whom James Taglieri, Washington, DC, was on the brief, for petitioner.

Sheila Kaplan, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before WAGNER, Chief Judge, and SCHWELB and REID, Associate Judges.

WAGNER, Chief Judge:

Petitioner, Angela Jewell, a former police officer who retired on disability as the result of a condition sustained in the line of duty, challenges a decision of the District of Columbia Police and Firefighters Retirement and Relief Board (Board) determining the amount of her disability pension. She argues that the Board erred in computing her earning potential in other jobs by including a position for which she was not qualified and temporary positions. We agree that the Board included in its determination a job for which Jewell was not qualified. Therefore, we reverse and

remand with instructions to the Board to recalculate Jewell's benefits.

## I.

Petitioner, Angela Jewell, was appointed to the District of Columbia Metropolitan Police Department on November 19, 1990. The Board determined that Jewell was incapacitated for further work with the Police Department because of psychological problems resulting from two shooting incidents while she was on duty. Based upon the evidence, including the testimony of a physician, the Board agreed that Jewell should be retired on disability resulting from the performance of her job as a police officer. The Board found that because of her disabling condition, incurred in the line of duty, Jewell was "no longer capable of performing useful and efficient service in the assigned duties of the District of Columbia Metropolitan Police Department." The Board found that there was no evidence that Jewell was unable to perform sedentary work. It also determined that Jewell had experience with security, investigations, collection of cash, answering telephones and filing. She had completed high school and two years of college. She had familiarity with fax, xerox, postage, cash register, calculator and adding machines. Therefore, the Board concluded that she could secure other employment if retired.

Following the presentation of medical evidence, the Board informed Jewell's counsel that the Board agreed that she should be retired on disability resulting from the performance of duty. The Board's chairman informed counsel for Jewell that the only area remaining for consideration concerned jobs that had been selected for calculation of the average salary of jobs which she had the capacity to perform. After a brief break in the proceedings, Jewell testified that she could type only five words per minute using two fingers.

## II.

There is no dispute that although Jewell cannot work as a police officer because of her work-related disability, she is capable of working in other positions on a full-time basis. The only issue raised upon review is the Board's computation of her earning capacity from other available employment. The Board calculated Jewell's disability benefits pursuant to D.C.Code § 4–616 (1994).[1] The Board concluded that the amount of Jewell's disability was 52% of 70% of her base salary, or 40% of her base salary, whichever is greater. D.C.Code § 4–616(e)(2)(A-D). Regulations provide a formula for determining the amount of the annuity which takes into account, among other factors, the salary for the position the disabled retiree has the capacity to

---

1. D.C.Code § 4–616(e)(2) provides in pertinent part as follows:

(B) In the case of any member described in subparagraph (A) of this paragraph, the Police and Firemen's Retirement and Relief Board shall determine within a reasonable time the percentage of disability for such member giving due regard to:

(i) The nature of the injury or disease;

(ii) The percentage of impairment reported pursuant to subparagraph (A) of this paragraph;

(iii) The position in the Metropolitan Police Force ... of the District of Columbia held by the member immediately prior to his retirement;

(iv) The age and years of service of the member; and

(v) Any other factors or circumstances which may affect the capacity of the member to earn wages or engage in gainful activity in his disabled condition, including the effect of the disability as it may naturally extend into the future.

\* \* \* \* \* \*

(D) The annuity of a member who is retired under this subsection shall be 70% of his basic salary at the time of retirement multiplied by the percentage of disability for such member as determined in accordance with subparagraph (B) of this paragraph, except that such annuity shall not be less than 40% of his basic salary at the time of retirement.

occupy.[2] Jewell argues that the annual salary for two of the jobs relied upon by the Board should not have been used in determining Jewell's earning potential because one job (furniture assembler) was a temporary position, and she was not qualified for the other position (junior secretary), which was also a temporary position. Including these jobs in the calculation, Jewell contends, increased the amount attributable to her earning potential, thereby reducing her annuity.

■ Our standard of review is governed by the D.C. Administrative Procedure Act which requires us to "set aside an [agency's] action or findings and conclusions" when not supported by substantial evidence. D.C.Code § 1–1510(a)(3)(E) (1999); *see also Long, supra* note 2, 728 A.2d at 114 (citations omitted). In that determination, we must consider " 'whether the agency findings are supported by reliable, probative, and substantial evidence in the record, and whether the conclusions reached by the agency flow rationally from these findings.' " *Breen v. District of Columbia Police & Firefighters Retirement & Relief Bd.,* 659 A.2d 1257, 1258 (D.C. 1995) (quoting *Szego v. Police & Firefighters' Retirement & Relief Bd.,* 528 A.2d 1233, 1235 (D.C.1987)) (other citations omitted). Applying that standard, we conclude that the Board's estimate of Jewell's potential earning capacity is not supported by substantial evidence.

2. Under the applicable regulation, 7 DCMR § 2515.3(e), the formula is (A–B)/A = C, and C × D equals E where:
   A is the current salary of the retiree's pre-injury position;
   B is the salary for the position the retiree has the capacity to occupy;
   C is the percentage of disability;
   D is 70% of the officer's basic salary;
   E is the amount of the annuity.
   *See also Long v. District of Columbia Police & Firefighters Retirement & Relief Bd.,* 728 A.2d 112, 115 n. 2 (D.C.1999) (citing 7 DCMR § 2515.3(e)). The actual figures used by the agency in determining the member's annuity are as follows:
   A = $32,349

■ The Board considered that Jewell, who was 31 years old, completed high school and two years of college, with a concentration in sociology and that she had no specialized training. She had worked as a waitress, cashier, bank teller and a receptionist. In factoring in Jewell's earning potential outside of police work, the Board took an average of five positions selected from Job Bank bulletins, namely: Furniture Assembler, $12,480; Junior Secretary, $22,880; Receptionist, $10,816; File Clerk, $13,650; and Receipts Processing Teller, $17,482. Thus, the Board concluded that the average salary that Jewell could obtain from outside employment was $15,461.60. The position of junior secretary required a typing speed of 40 words per minute. Jewell testified that she had never worked as a secretary; that she could not type very well; and that her typing speed was about five words per minute.[3] The Board took into account a work experience questionnaire on which Jewell indicated her familiarity with various office machines, including the typewriter. The Board concluded from this response to the questionnaire that Jewell "admitted being able to type." However, the questionnaire relied upon by the Board required Jewell to indicate only "the programs that you are familiar with." In response, Jewell checked typing, but did not complete the portion of the form which inquired about the number of words per minute that she could type on a manu-

   B = $15,461.60
   C = 52%
   D = $22,644.30
   E = $11,821.18
   Since the law provides that the annuity shall not be less than 40 % of the basic salary at the time of retirement in a performance of duty case, the Board calculated the pension at 40% of Jewell's current salary or $12,939.60.

3. The Board argues that Jewell failed to challenge the use of this job as beyond her skills and therefore, it should not be considered on appeal. *See Glenbrook Rd. Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 605 A.2d 22, 33 (D.C.1992). This contention is belied by the record.

al or electric typewriter or a word processor. There is no evidence to refute Jewell's testimony concerning the level of her typing skills. Therefore, the Board's factual finding that Jewell introduced no evidence that she could not perform the job of junior secretary is contrary to the evidence. Its determination that Jewell had the skills to perform the job is not supported by substantial evidence, and therefore, cannot be upheld. The Board is required to give "due regard" to "the capacity of the [police officer] to earn wages or engage in gainful activity," among other factors. D.C.Code § 4–616(e)(2)(B)(v). In making that determination, the Board must consider the average salary for positions which the retiring police officer is currently able to occupy. *See Breen, supra,* 659 A.2d at 1258–59. The record shows that Jewell could not meet the minimum qualifications for the position of junior secretary. Therefore, the Board erred in considering it in its determination.

■■■ Jewell argues that the secretarial position should not have been considered for another reason, specifically, that it was a five-month temporary position. She makes a similar argument with respect to the position of furniture assembler. The job of furniture assembler was advertised as a position available for two days. The Board annualized the salaries for each of these positions in computing earning potential. The Board contends that Jewell

cannot raise these challenges to the computation because she did not do so when the case was at the administrative level. Jewell did not present this argument before the agency. When counsel was asked at the hearing whether there were any questions, comments, or concerns about the jobs selected by the Board, counsel presented evidence only about Jewell's lack of qualifications for the secretarial position. The rules of practice and procedure of the Board provide that a party may petition for reconsideration.[4] A notice concerning appeal rights, which was annexed to the Board's decision specified that: "A *petition for reconsideration may be filed* by an applicant within 15 days after receipt of the Retirement Board's decision." A copy of the Board's regulations for filing petitions for reconsideration and appeals was attached to the Board's decision. However, Jewell did not file a motion for reconsideration challenging the Board's use of temporary positions in its calculations.[5] Absent exceptional circumstances, this court will not consider claims which were not presented to the agency. *Rafferty v. District of Columbia,* 583 A.2d 169, 178 (D.C.1990). No showing of exceptional circumstances has been made.[6] Therefore, we do not consider this issue.

In order for employment to be deemed available, the jobs should exist in the open market in the area. *See Long, supra* note

---

**4.** The Board's rules provide that a petition for reconsideration, rehearing or reargument may be filed within fifteen days after receipt of the decision. *See* D.C. Personnel Regulations, Rules of Practice and Procedure for the Police and Firefighters Retirement and Relief Board, Ch. 26B § 2525.1 (1989). Petitioner must identify the matters of record he or she contends were decided erroneously. *Id.* at 2526.1 These rules contemplate that the petition for reconsideration may be based in whole or in part on new matter and sets forth the procedure for presenting new matter. *Id.* at 2526.2.

**5.** We address the availability of the Board's reconsideration mechanism only because it provided another opportunity for Jewell to challenge the use of the temporary positions

in the Board's calculations after the hearing. We do not suggest by this discussion that a motion for reconsideration was required to preserve the claim.

**6.** At oral argument, counsel for petitioner seemed to indicate that there was no opportunity for Jewell's attorney before the agency to examine or know the five jobs that the Board would select for Jewell from the eighteen pages of job listings from the Job Bank. The record does not support this argument. Jewell's counsel did not request additional time to review the document at the hearing, and she did not file a motion for reconsideration after the Board's decision was rendered showing the use of the temporary position in the calculation.

2, 728 A.2d at 115 (citing 7 DCMR § 2525.2(e)(4)). The utilization of the secretarial position in the calculation of the average salary Jewell was capable of earning had an adverse impact on Jewell's annuity because it had much higher wages than the other jobs.[7] Jewell would have received a corresponding increase in her pension. Having concluded that the Board's calculation of the benefits to which Jewell was entitled was based upon an unsupported assumption, we reverse and remand to the Board for a recalculation of Jewell's annuity in a manner not inconsistent with this opinion, either with the secretarial position excluded or an appropriate position substituted. *See Long,* 728 A.2d at 116 n. 4.

*So ordered.*

---

[7]. With the secretarial position excluded, the average wages would have been $13,357 per annum instead of $15,461, as the Board found.