**Christopher J. BAUSCH, Petitioner,**

v.

**DISTRICT OF COLUMBIA POLICE AND FIREFIGHTERS' RETIREMENT AND RELIEF BOARD, Respondent.**

**No. 01–AA–732.**

District of Columbia Court of Appeals.

Argued Feb. 26, 2004.

Decided Aug. 5, 2004.

Frederic W. Schwartz, Jr., with whom James W. Taglieri, was on the brief, for petitioner.

David Hayden, Assistant Corporation Counsel, Robert J. Spagnoletti, Corporation Counsel, Edward E. Schwab, Deputy Corporation Counsel, and Sheila Kaplan,

Assistant Corporation Counsel, were on the brief for respondent.[1]

Before STEADMAN, SCHWELB and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Petitioner Christopher Bausch challenges the calculation of his annuity by the District of Columbia Police and Firefighters' Retirement and Relief Board (the Retirement Board). We agree with petitioner that the Retirement Board's calculation rests on a determination of his earning capacity that is not supported in critical respects by substantial evidence of available jobs that petitioner has the capacity to perform. We remand this case for a redetermination of petitioner's retirement annuity.

### I.

Petitioner was appointed to the District of Columbia Fire and Emergency Medical Services Department in 1980. In the performance of his duties as a firefighter, he sustained several injuries to his back and knees.[2] The Board of Police and Fire Surgeons recommended to the Retirement Board that petitioner be considered for disability retirement.

After holding an evidentiary hearing, the Retirement Board agreed that petitioner was disabled from "useful and efficient service" with the Department and hence entitled to receive a retirement annuity of between 40% and 70% of his basic salary depending on his "percentage of disability." *See* D.C.Code § 5–710(e)(2)(A–D) (2001). The Retirement Board computes the percentage of disabili-

ty by comparing the basic salary for the position last occupied by the firefighter or police officer with "the basic salary for the position he or she has the capacity to occupy while in disability retirement." 7 DCMR § 2515.3(b)(2) (1986). To derive this latter figure for petitioner, the Retirement Board looked to the average salary of available jobs listed by the District of Columbia Department of Employment Services in its Job Bank for which the Board found petitioner to be qualified. *See id.,* § 2515.2(e)(4), (6). In determining whether petitioner's impairments rendered him unqualified for a given job, the Retirement Board considered medical evidence and the description of the job's requirements in the *Enhanced Guide for Occupational Exploration,* a standard reference work co-authored by the United States Department of Labor (hereinafter referred to as the *Enhanced Guide*).

Over petitioner's objections, the Retirement Board found petitioner qualified for four available jobs: (1) shopkeeper, a part-time (twenty-hours-per-week) position with an extrapolated full-time annual salary of $16,972.80; (2) library technician, a full-time (forty-hours-per-week) position with an annual salary of $22,554.00; (3) library aide, a full-time position with an annual salary of $20,233.00; and (4) receptionist, a full-time position with an annual salary of $17,300.00. Based on these findings, the Retirement Board concluded that petitioner is capable while in disability retirement of obtaining employment with an annual salary of $19,264.95 (the average for the four jobs) and that he therefore is entitled to the minimum annuity of 40% of his basic

---

1. On May 26, 2004, the Office of the Corporation Counsel of the District of Columbia was renamed the Office of the Attorney General of the District of Columbia. *See* Mayor's Order 2004–92, 51 D.C. Reg. 6052 (2004).

2. Following back and knee surgery, petitioner was diagnosed with "status post lumbar laminectomy with residuals" and "status post right medial meniscectomy with residuals."

firefighter's salary, or $16,628 a year.[3]

## II.

■ We review a decision of the Retirement Board to ensure that it "(1) made findings of fact on each material, contested factual issue, (2) based those findings on substantial evidence, and (3) drew conclusions of law which followed rationally from the findings." *Beckman v. District of Columbia Police & Firefighters' Retirement & Relief Bd.*, 810 A.2d 377, 384 (D.C.2002) (internal quotation marks and citations omitted). If the decision is not supported by substantial evidence in the record, we must set it aside. *See Jewell v. District of Columbia Police & Firefighters Retirement & Relief Bd.*, 738 A.2d 1228, 1230 (D.C.1999); D.C.Code § 2–510(a)(3)(E) (2001). "Substantial evidence is more than a mere scintilla. It is relevant evidence such as a reasonable mind might accept as adequate to support a conclusion." *Epstein, Becker & Green v. District of Columbia Dep't of Employment Servs.*, 812 A.2d 901, 902–03 (D.C.2002).

■ Petitioner contends that the Retirement Board lacked substantial evidence to find that the four jobs it relied on to determine his annuity were available positions that he is qualified to fill. We agree with petitioner as to three of the four jobs.

■ 1. *Shopkeeper.* Petitioner argues that the Board could not find that a full-time shopkeeper's position was available at an annual salary of $16,972.80 merely because there was a job listing for a part-time shopkeeper's position at half that salary. We agree. "Jobs that the disabled retiree is qualified for *shall exist* in the open labor market in the commuting area—the Washington Metropolitan area—in order for employment to be deemed available." 7 DCMR § 2515.2(e)(4) (emphasis added). The regulations require the Retirement Board to look to the Department of Employment Services for information as to job availability. *Id.*, § 2515.2(e)(6). A listing by the Department of a part-time position is not substantial evidence that a full-time position is available at the same rate of pay. *See Long v. District of Columbia Police and Firefighters Retirement and Relief Board*, 728 A.2d 112, 115 (D.C.1999). As in *Long*, "there was no evidence before the Board that [a] full-time position for [shopkeeper] actually exist[ed]" at the annualized salary the Board calculated. *Id.* "[A]n unsupported and unpersuasive assumption regarding the convertibility of part-time positions [ ] into full-time positions" is not good enough. *Id.*, 728 A.2d at 116.

■ 2. *Library Technician and Library Aide.* Petitioner argues that the Retirement Board did not have substantial evidence to support its finding that he physically is qualified for either of the two library positions. Again, we agree. According to their job descriptions in the *Enhanced Guide*, the two positions required "occasional stooping." According to the *Enhanced Guide*, the term "stoop-

---

**3.** The Board used the following formula, set forth in 7 DCMR § 2515.3(e), to calculate petitioner's annuity: $(A–B)/A = C$, and $C \times D = E$, where

$A$ = petitioner's current salary as a firefighter;

$B$ = the current salary for the position that petitioner has the capacity to occupy;

$C$ = the percentage of disability;

$D$ = 70% of petitioner's basic salary; and

$E$ = the amount of the annuity, *provided* that the amount of the annuity shall not be less than 40% of the petitioner's basic salary.

Using petitioner's salary as a firefighter of $41,570 for "A," and its computed average salary figure of $19,264.95 for "B," the Board calculated petitioner's percentage of disability ("C") to be 54%. Since 54% × 70% is less than 40%, the Board determined that petitioner's annuity ("E") would be the minimum 40% of his basic salary.

ing" means "bending [the] body downward and forward by bending [the] spine at the waist, requiring full use of the lower extremities and back muscles," and "occasional" means that the activity may be performed up to one-third of an eight-hour day (i.e., as much as two hours and forty minutes). The Retirement Board had no other evidence before it as to the physical requirements associated with the listed library jobs. But in the uncontradicted opinion of Dr. Gangagee Balkissoon, the medical examiner from the Board of Surgeons, petitioner does not have the physical capacity to perform a job that could require stooping up to a third of the time on a regular basis. Indeed, Dr. Balkissoon rated petitioner as someone who should "never" engage in activities involving "stooping." Given Dr. Balkissoon's evaluation and the sparsity of the evidence in the record as to the physical requirements of the library jobs, we fail to see that the Retirement Board had a substantial evidentiary basis on which to find that petitioner could meet the qualifications for the two positions.[4]

■ 3. *Receptionist.* Finally, petitioner claims that the Retirement Board did not have substantial evidence to support its finding that he qualifies for a receptionist job. With this claim we do not agree. Petitioner argues that all but one of the several receptionist positions listed as available required relevant experience, which is something he lacks. The existence of one suitable job in the Job Bank, however, is a sufficient basis for a finding of job availability. *See Long,* 728 A.2d at 115.[5]

The Retirement Board erred in basing its annuity calculation on findings unsupported by substantial evidence that petitioner could work full-time as a shopkeeper, a library technician, or a library aide. We cannot conclude that the error was harmless.[6] We therefore reverse the Board's determination and remand for the Board to redetermine petitioner's annuity in a manner not inconsistent with this opinion. "In accordance with what appears to be its normal practice of averaging [several] jobs which the retiree has the capacity to perform, the Board may of course substitute proper positions for the three [unsuitable] positions it previously used." *Long,* 728 A.2d at 116 n. 4.

*So ordered.*

---

4. At the hearing, the Chairperson of the Retirement Board asked Dr. Balkissoon whether petitioner could "retrieve something off of a lower shelf occasionally." Dr. Balkissoon answered, "Yes. I mean, provided it's not requiring full use of the lower extremities and the back muscles." We do not accept this unelaborated testimony as constituting substantial evidence that petitioner had the capacity to satisfy the physical requirements of the library jobs. The record does not support the assumption implicit in the quoted exchange, that the jobs in question called for nothing more strenuous than the occasional retrieval of books from a lower shelf without strain on the lower extremities and back muscles.

5. Petitioner also contends that the receptionist job was not suitable for him because it requires specific vocational preparation lasting from three to six months. As petitioner did not raise this objection before the Retirement Board, it is "not properly before us." *Long,* 728 A.2d at 116 n. 5. "Absent exceptional circumstances," which have not been shown here, "this court will not consider claims which were not presented to the agency." *Jewell,* 738 A.2d at 1231.

6. If, for example, the Retirement Board had relied solely on the receptionist position to provide the salary of the job petitioner was capable of filling, the Board would have calculated petitioner's annuity as 59% of 70% of his firefighter's salary, or $17,168.41.