Christopher J. BAUSCH, Petitioner,

v.

DISTRICT OF COLUMBIA POLICE & FIREFIGHTERS' RETIREMENT AND RELIEF BOARD, Respondent.

No. 04–AA–1335.

District of Columbia Court of Appeals.

Argued March 14, 2007.

Decided May 24, 2007.

Frederic W. Schwartz, Jr., with whom James Taglieri, was on the brief, for petitioner.

Karen A. Weiss, for respondent. Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, Edward E. Schwab, Deputy Solicitor General, and David A. Hyden, Assistant Attorney General, were on the brief, for respondent.

Before FARRELL and RUIZ, Associate Judges, and SCHWELB, Senior Judge.

RUIZ, Associate Judge:

Petitioner, Christopher J. Bausch, asks us to review and reverse a decision of the District of Columbia Police and Firefight-

ers' Retirement and Relief Board ("Relief Board"), which calculated petitioner's annuity using salaries of potential employment positions measured as of the time of the Relief Board's initial order granting retirement on the basis of disability, and not, as petitioner contended, updated to the time of the order now on review. We defer to the Relief Board's reasonable interpretation of its regulations and affirm.

### Factual Summary

Petitioner became a member of the D.C. Fire and Emergency Medical Services Department as a firefighter in September of 1980. Between 1984 and 1994, he repeatedly injured his back and knee while on duty and underwent a series of surgeries. On December 14, 1994, the Administrative Services Bureau, Medical Services Division, of the Metropolitan Police Department recommended to the Relief Board that petitioner be classified as "permanently disabled with a functional impairment of 10%."

On October 28, 1996, after a hearing, the Relief Board found petitioner to be incapacitated due to work-related injuries, and determined that he "be retired under the provisions of D.C.Code (1981) §§ 4–607(2) and 4–616," [1] which provides for a disability retirement annuity based on the retir-

ee's "percentage of disability." D.C.Code § 5–710(e)(2)(B) (2001). Pursuant to the formula in 7 DCMR § 2515.3(e) (1986) for determining the statutory disability retirement annuity, the Relief Board then calculated petitioner's "percentage of disability" at 54%, a calculation based on the average salary of five positions it concluded petitioner was able to perform (storekeeper, library technician, library aide, peak-time bank teller, and receptionist) and his salary as a firefighter.[2] The statute provides that the annuity shall be no more than 70% of the retired member's basic salary "at the time of retirement," but no less than 40% of such basic salary. D.C.Code § 5–710(e)(2)(D). The Relief Board determined that petitioner was entitled to the minimum 40% annuity, or $16,628.

In his first petition to this court, petitioner claimed that he was incapable of performing any of the five jobs chosen by the Relief Board to calculate his percentage of disability. Before this court ruled on the petition, the District moved to remand the case to the Relief Board for recalculation of petitioner's percentage of disability, based on this court's decision in *Long v. D.C. Police & Firefighters' Ret. & Relief Bd.*, 728 A.2d 112 (D.C.1999).[3] This court granted the motion for remand.

---

1. D.C.Code § 4–616 has been recodified at D.C.Code § 5–710(e) without substantial alteration. For ease of reference, we use the 2001 codification. See note 7, *infra*.

2. The formula is as follows:
 $(A - B)/A = C$; $C \times D = E$ (annuity), where
 A = current salary for position last held by member
 B = current average salary for positions disabled member has the capacity to occupy
 C = percentage of disability
 D = 70% of A
 *See* 7 DCMR § 2513(e).

3. In its October 28, 1996 order, the Relief Board had used the position of "peak-time

bank teller" in order to calculate petitioner's percentage of disability. In *Long*, 728 A.2d at 115, this court rejected utilization of a peak time bank teller position because there was "no evidence before the Board that [a] full-time position[ ] for ... peak-time teller actually exist[ed]," and 7 DCMR § 2515.2(e)(4) requires that, for purposes of calculating the percentage of disability, "[j]obs that the disabled retiree is qualified for shall exist in the open labor market." Consequently, as in *Long*, in the absence of record evidence about the availability of the position in the labor market, the Relief Board was precluded from using the position of peak-time bank teller in the present case.

On remand, Relief Board Chairperson Alma L. Hicks wrote petitioner a letter suggesting four new positions for use in calculating petitioner's percentage of disability: aide, customer service/data entry, switchboard operator/receptionist, and exterminator. After petitioner rejected all of these positions, the Relief Board issued an amended order, which substituted the position of switchboard operator/receptionist for peak-time bank teller.[4] The Relief Board's amended order again resulted in the minimum 40% annuity of $16,628.

In his second petition to this court, petitioner requested we review the Relief Board's amended order, claiming that it was arbitrary and capricious. The District again moved to remand the case, and this court granted the District's motion.

On April 25, 2001, the Relief Board issued a second amended order in the case, which recalculated petitioner's annuity, leaving out the position of switchboard operator/receptionist, and using the four remaining positions to calculate the percentage of disability. The new calculation again yielded the minimum 40% annuity. In the third petition, for review of the second amended order, this court concluded that the Relief Board had erred in selecting three of the four positions that it had used to calculate petitioner's percentage of disability, and we remanded the case to the Relief Board "to redetermine petitioner's annuity" using only positions that exist and that petitioner is qualified for and able to perform.[5] *Bausch v. D.C. Police & Firefighters' Ret. & Relief Bd.,* 855 A.2d 1121, 1125 (D.C.2004).

Following the court-ordered remand, on September 24, 2004, the Relief Board issued a third amended order using only the receptionist position approved by this court, which resulted in a percentage of disability of 58%, again entitling petitioner to the 40% minimum annuity. Petitioner filed a motion for reconsideration or rehearing, which did not challenge the position used for the calculation but claimed that the Relief Board had erred in using the salaries of his position as a firefighter and a receptionist position in 1996, rather than the salaries of those positions as of the time of its order in September, 2004. In his motion, petitioner argued that under 7 DCMR § 2515.3(c), which requires that salaries used to calculate the annuity be measured "at the time of the Board's final decision," the Relief Board was required to use salaries as of the time of its latest amended order, issued in September of 2004.

The Relief Board denied the motion for reconsideration. It disagreed with petitioner's interpretation of the regulation, and instead interpreted the phrase "final decision" to mean the "final administrative action" that is subject to judicial review, not orders subsequently amended on remand. Under this interpretation, the "final decision" in this case, concluded the Relief Board, was made in October 1996 when petitioner was granted disability retirement. In this, his fourth petition for review in the case, petitioner asks us to reverse the Relief Board's interpretation of the regulation.

---

**4.** The remaining positions used to calculate the percentage of disability were the same as those used in the Relief Board's October 28, 1996 order, such that the amended order used the positions of switchboard operator/receptionist, storekeeper, library technician, library aide, and receptionist.

**5.** The court concluded that (1) the store-keeper position could not be used because it was a part-time position; and (2) there was not substantial evidence supporting petitioner's ability to perform either the library technician or library aide positions. This court agreed that there was substantial evidence that petitioner was able to perform the receptionist position.

### Analysis

 The narrow scope of our review in administrative cases is well-defined. "This court's review of administrative decisions of the Board is limited to ensuring that the Board (1) made findings of fact on each material, contested factual issue, (2) based those findings on substantial evidence, and (3) drew conclusions of law which followed rationally from the findings." *Beckman v. D.C. Police & Firefighters' Ret. & Relief Bd.*, 810 A.2d 377, 384 (D.C.2002) (internal quotation marks and citations omitted). "When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). "[W]e need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Id.*

 In his brief, petitioner argues that the Relief Board should have used salaries as of September 2004 because "[f]inal means last, ultimate, conclusive, and endmost." [6] We do not think that the interpretation petitioner urges is so evidently or uniquely correct that we should reject the Relief Board's interpretation of the term "final decision" in 7 DCMR § 2515.3(c), which we conclude is reasonable.

 It is a basic tenet that statutory language must guide the interpretation of regulations issued to implement the statute. *See Tenants of 738 Longfellow St., N.W. v. D.C. Rental Hous. Comm'n*, 575 A.2d 1205, 1213 (D.C.1990). The Relief Board interpreted the term "final decision" in its regulation establishing the formula for calculating the retirement annuity to be the agency's decision granting disability retirement that is first subject to judicial review. This interpretation is consistent with the statute's mandate that a firefighter's annuity "shall be" calculated based on his salary "at the time of retirement." D.C.Code § 5–710(e)(2)(D).[7] There is no

---

**6.** At oral argument, petitioner additionally argued that the phrase "current salary" used in the formula for computing the percentage of disability, 7 DCMR § 2515.3(e)(2), see note 2 *supra*, supports his interpretation of the term "final decision" used in another subsection of the same regulation. Because this argument was not raised in the motion for reconsideration before the Relief Board or in his brief on appeal, we consider it waived. *See Jewell v. D.C. Police & Firefighters Ret. & Relief Bd.*, 738 A.2d 1228, 1231 (D.C.1999) ("Absent exceptional circumstances, this court will not consider claims which were not presented to the agency.") (citations omitted); *In re Shearin*, 764 A.2d 774, 778 (D.C.2000) ("Points not urged in a party's initial brief are treated as abandoned.") (citations omitted). In any event, we do not think that the use of the phrase "current salary" in the formula alters our conclusion that the Relief Board's interpretation of the term "final decision" in the regulation is reasonable and consistent with the statutory language, as it could have been intended to mean the salary current at the time of the Relief Board's "final decision" granting disability retirement.

**7.** D.C.Code § 5–710(e) states:

(1) Whenever any member who is an officer or member of the Metropolitan Police force or the Fire Department of the District of Columbia and who first becomes such a member after the end of the 90–day period beginning on November 17, 1979, is injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty at any time after appointment and such injury or disease or aggravation permanently disables him for the performance of duty, he shall upon retirement for such disability, receive an annuity computed in accordance with paragraph (2) of this subsection.

(2) (A) In the case of any member who retires under this subsection or subsection (b) of § 5–709, the Board of Police and Fire

dispute in this case that the Relief Board retired petitioner for disability in its October 1996 order. Accordingly, consistent with the statutory language, the "final decision" referred to in 7 DCMR § 2515.3(c) is the October 28, 1996 decision granting disability retirement to petitioner and determining—albeit incorrectly—the percentage of his disability.

Additionally, we agree with the District's contention that interpreting "final decision" to be the decision in which there is a *correct calculation* of annuity would create a windfall for retirees, such as petitioner, who have successfully challenged before this court errors in the Board's calculation of annuity. Once the annuity is correctly calculated, the retiree is paid the correct amount retroactively, and he is placed in the position in which he would have been in the absence of error. Under petitioner's interpretation of the regulation, however, two disability retirees with the exact same percentage of impairment and disability would be entitled to different annuities if the Relief Board correctly calculates one retiree's percentage of disability in its initial order, but makes an error in the calculation for the other retiree and subsequently issues an amended order correcting the error.[8] We see no reason to treat two retirees with the same percentage of impairment and disability differently merely because the Relief Board erred in its original calculation, where there has been no financial prejudice as a result of the error.[9]

Surgeons shall determine, within a reasonable time and in accordance with regulations which the Mayor shall promulgate, the percentage of impairment for such member and shall report such percentage of impairment to the Police and Firemen's Retirement and Relief Board.
(B) In the case of any member described in subparagraph (A) of this paragraph, the Police and Firemen's Retirement and Relief Board shall determine within a reasonable time the percentage of disability for such member giving due regard to:
(i) The nature of the injury or disease;
(ii) The percentage of impairment reported pursuant to subparagraph (A) of this paragraph;
(iii) The position in the Metropolitan Police force or the Fire Department of the District of Columbia held by the member immediately prior to his retirement;
(iv) The age and years of service of the member; and
(v) Any other factors or circumstances which may affect the capacity of the member to earn wages or engage in gainful activity in his disabled condition, including the effect of the disability as it may naturally extend into the future.
(C) The percentage of impairment or the percentage of disability for a member to whom this subsection applies may be redetermined at any time prior to the time such member reaches the age of 50 and his annuity shall be adjusted accordingly.
(D) The annuity of a member who is retired under this subsection shall be 70% of his basic salary at the time of retirement multiplied by the percentage of disability for such member as determined in accordance with subparagraph (B) of this paragraph, except that such annuity shall not be less than 40% of his basic salary at the time of retirement.
(E) For purposes of this subsection:
(i) The term "impairment" means any anatomic or functional abnormality or loss existing after maximal medical rehabilitation has been achieved.
(ii) The term "disability" means any actual or presumed reduction in or absence of ability to engage in gainful activity which is caused, in whole or in part, by an impairment.

8. In this case, for example, petitioner argues that he should benefit from salary increases over an eight-year period, from 1996 to 2004.

9. At oral argument, the District's counsel informed the court that in most cases, a member of the force who suffers disability due to injury or illness will be placed on leave pending a final determination on his disability retirement. While on such status, the member receives full compensation. Therefore,

Concluding that the Relief Board's interpretation of its regulation is consistent with the statute and sound in policy, we affirm.

*So ordered.*

any delay in the Relief Board's final decision on disability retirement does not prejudice the member, as the annuity following disability retirement is capped at 70% of the basic salary. Notwithstanding the long delay in the correct re-calculation of the percentage of disability underlying petitioner's annuity, from the outset he has been receiving the 40% annuity to which he is entitled, and he has not shown that the delay has prejudiced him.